**TOY MANUFACTURERS OF AMERICA, INC., Petitioner,**

v.

**CONSUMER PRODUCT SAFETY COMMISSION, Respondent.**

**No. 423, Docket 79–4136.**

United States Court of Appeals, Second Circuit.

Argued Dec. 7, 1979.

Decided July 22, 1980.

Aaron Locker, Theodore M. Greenberg, Christopher J. Corbett, Locker & Greenberg, New York City, for petitioner.

Marion L. Jetton, Barry Grossman, Attys., Dept. of Justice, Andrew S. Krulwich, Gen. Counsel, D. Stephen Lemberg, Asst. Gen. Counsel, Alan C. Shakin, Atty., Consumer Product Safety Commission, John H. Shenefield, Asst. Atty. Gen., Washington, D. C., for respondent.

Before WATERMAN, MOORE and MANSFIELD, Circuit Judges.

WATERMAN, Circuit Judge:

Petitioner Toy Manufacturers of America, Inc. (TMA)[1] seeks judicial review, pursuant to 15 U.S.C. § 1262(e)(3)(A), of a certain regulation promulgated by the Consumer Product Safety Commission (CPSC), which amends 16 Code of Federal Regulations by adding a new Part 1501 and a new paragraph (a)(9) to Section 1500.18. The regulation is entitled "Methods for Identifying Toys and Other Articles Intended for Use by Children Under 3 Years of Age Which Present Choking, Aspiration, or Ingestion Hazards Because of Small Parts" (hereinafter referred to as the "Small Parts Regulation"). It appears at 44 Federal Register 34892–34905 (June 15, 1979). For the reasons expressed herein, the petition for review is denied.

The Small Parts Regulation at issue here was developed in various administrative proceedings over a six year period pursuant to authorization contained in the Federal Hazardous Substances Act (FHSA), 15 U.S.C. §§ 1261–1274.[2] In January 1973, the Food and Drug Administration (FDA), Department of Health, Education and Welfare, which was then delegated the task of implementing the FHSA, published for public comment the precursor of the present Small Parts Regulation. See 38 Federal Register 2179–2180 (Jan. 22, 1973). Soon thereafter, in May 1973, the newly created CPSC succeeded to the FDA's responsibilities under the FHSA. See 15 U.S.C. § 2079(a).

In October 1978, following a somewhat lengthy review of the comments received pertaining to the original FDA version of the Small Parts Regulation, the CPSC proposed for public comment its own expanded version of the Small Parts Regulation. See 43 Federal Register 47684–47688 (Oct. 16, 1978). After consideration and review of the written comments received concerning this October 1978 proposed regulation, the CPSC promulgated the final version of the Small Parts Regulation in June 1979, with a targeted effective date of January 1, 1980. See 44 Federal Register 34903–34905 (June 15, 1979).

The conceded goal of the Small Parts Regulation here challenged is to ban from introduction into interstate commerce certain children's articles which are either composed of or contain small parts deemed to present a substantial health hazard. As is apparent from the title of the Small Parts Regulation, it is applicable only to a limited range of children's articles, namely those articles that are intended for use by children under three years of age. To aid

---

1. TMA is a non-profit trade association whose membership of manufacturers and importers of toys account for approximately 90% of the toy industry's annual dollar volume of sales at the wholesale level in the United States.

2. The FHSA authorizes the CPSC to determine by regulation that "[a]ny toy or other article intended for use by children [that] . . . presents an electrical, mechanical, or thermal hazard" is a hazardous substance. 15 U.S.C. § 1261(f)(1)(D). The CPSC may establish that an article presents a mechanical hazard if "in normal use or when subjected to reasonably foreseeable damage or abuse, its design or manufacture presents an unreasonable risk of personal injury or illness (1) from fracture, fragmentation, or disassembly of the article . . . (7) because the article (or any part or accessory thereof) may be aspirated or ingested . . . or (9) because of any other aspect of the article's design or manufacture." 15 U.S.C. § 1261(s). Once the CPSC has established that an article presents the requisite "mechanical hazard" to be properly identified by regulation as a "hazardous substance," it automatically is deemed a "banned hazardous substance," 15 U.S.C. § 1261(q)(1)(A), which is prohibited from introduction or delivery for introduction into interstate commerce. 15 U.S.C. § 1263(a).

in the identification of such articles, the Small Parts Regulation sets forth a rather extensive, albeit non-exclusive, list of articles that are regarded by the CPSC as intended for use by children under three years of age. In addition, the Small Parts Regulation enumerates three criteria that it considers relevant in determining whether a particular article, although not found among the articles listed, nevertheless will be regarded as "intended, marketed or labeled to be entrusted to or used by children under three years of age" and thus is within the coverage of the Small Parts Regulation.[3]

If a particular article is found to be within the coverage of the Small Parts Regulation, it then will be subjected to various testing procedures. Essentially, these testing procedures are designed to determine whether parts of an article will become detached during normal use, or during the course of reasonably foreseeable damage or abuse, and whether an article or its detachable parts will exceed a certain prescribed safe minimum size. Finally, the Small Parts Regulation provides that any article that "fails" these established testing procedures will be considered a banned hazardous substance within the meaning of the FHSA, and therefore it may not be introduced into interstate commerce.

▆ At the outset, we note that TMA expresses no objection to the concept that the CPSC should be able to ban any children's article that presents substantial health hazards, and TMA does not challenge the CPSC's well-documented conclusion that children's articles either composed of or containing small parts present a substantial health hazard, particularly to children under three years of age.[4] In addition, because most of the testing procedures detailed in the Small Parts Regulation are identical to those prescribed by TMA's own voluntarily adopted safety standard, which already is generally adhered to throughout the toy manufacturing industry, TMA does not contest the validity of that portion of the Small Parts Regulation. Therefore, TMA's challenges to the validity of the Small Parts Regulation are limited to contentions that the CPSC has proceeded under inappropriate statutory authority in promulgating the regulation, that the CPSC plans to employ invalid enforcement procedures to insure compliance with the Small Parts Regulation, and that the Small Parts Regulation amounts to a criminal statute employing unreasonably vague language to describe the proscribed activity.[5]

TMA initially contends that the FHSA cannot supply the CPSC with statutory authority to promulgate the Small Parts Regulation, inasmuch as that regulation sets forth a generic standard that purports to be applicable to a wide range of products. TMA argues that the Consumer Product Safety Act (CPSA) is the appropriate statutory vehicle for the CPSC to employ in promulgating generic standards, and that both the statutory language and the legislative history of the FHSA support the interpretation that the FHSA was intended to

---

3. These three criteria are: (1) the manufacturer's stated intent (such as on a label) if it is a reasonable one; (2) the advertising, promotion, and marketing of the article; and (3) whether the article is commonly recognized as being intended for children under three. 44 Federal Register 34892, 34904 (June 15, 1979).

4. The CPSC has summarized the accident and injury data that form the basis for its conclusion that small parts present a substantial health hazard to children under three years of age in the introductory material accompanying the final proposed version of the Small Parts Regulation. *See* 44 Federal Register 34892, 34893 (June 15, 1979).

5. As a preliminary matter, the CPSC argues that because TMA raised only its "void for vagueness" argument in the agency proceedings below, this Court should refuse to consider the other three arguments that TMA advances in the present petition for review. TMA maintains, however, that even if it did not advance these other three arguments in the agency proceedings below, other parties involved in those proceedings did, and the applicable law requires only that these issues be raised before and be considered by the agency. See *Hennesey v. SEC*, 285 F.2d 511, 515 (3d Cir. 1961). We agree with the position advanced by TMA, and accordingly will address all arguments raised by TMA in this petition for review.

deal with only specific, individual hazardous articles.

TMA's argument concerning the language of the FHSA rests on the observation that the relevant statutory passages refer only to individual products. *See, e. g.,* 15 U.S.C. § 1261(f)(1)(D): "The term 'hazardous substance' means . . . [a]ny toy or other article intended for use by children which the Secretary by regulation determines, in accordance with section 1262(e) of this title, presents an electrical, mechanical, or thermal hazard."; 15 U.S.C. § 1262(e): "A determination by the Secretary that a toy or other article intended for use by children presents an electrical, mechanical, or thermal hazard shall be made by regulation . . . ." From this use of language, TMA concludes that the FHSA's banning procedures were intended to deal with only one product at a time, and not with a broad range of products at the same time.

As CPSC correctly indicates, however, TMA's statutory language argument could be nullified by reference to 1 U.S.C. § 1, which provides in relevant part that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise—words importing the singular include and apply to several persons, parties, or things . . . ." Certainly, nothing in the FHSA explicitly limits the employment of its banning procedures to situations involving only individual products, nor does the general thrust of the FHSA suggest that, in the Act's enforcement, application of the typical rule of statutory construction set forth in 1 U.S.C. § 1 would be inappropriate.

 However, because we recognize that "this rule is not one to be applied except where it is necessary to carry out

the evident intent of the statute," *First National Bank v. Missouri*, 263 U.S. 640, 657, 44 S.Ct. 213, 215, 68 L.Ed. 486 (1924), we will proceed to examine the legislative history of the FHSA to determine whether application of the normal rule of construction set forth in 1 U.S.C. § 1 would run contrary to the statutory intent. Our review of the pertinent legislative history leads us to the same conclusion as that reached by the United States District Court for the District of Columbia in *Tuchinsky v. Consumer Product Safety Commission*, Civ. Action No. 219–73 (D.D.C.) (Nov. 14, 1974): "The legislative history appears clear in favoring general prescriptive regulations of the broadest, most comprehensive type and would favor case-by-case proceedings only where such general prescriptive regulations prove impossible." *Id.* at 5.[6] *See Forester v. Consumer Product Safety Commission*, 559 F.2d 774 (D.C.Cir.1977).

Clearly, identification of the hazard that is the concern of the Small Parts Regulation (*i. e.,* small parts) appears well suited to a general prescriptive approach employing carefully defined, objective, and standardized testing procedures. Therefore, all that remains to be considered is whether a general prescriptive approach would be inappropriate in delineating the scope of coverage of the Small Parts Regulation (*i. e.,* in identifying those articles that are intended for use by children under three years of age, and which must be subjected to the small parts testing procedures). This concern is embodied in TMA's final contention that the general prescriptive language employed to delineate the scope of coverage of the Small Parts Regulation runs afoul of the Fifth Amendment's due process proscriptions against unreasonably vague criminal statutes.[7] In view of our disposition of

---

**6.** We find this conclusion to be amply supported by the following language from the pertinent legislative history:

It is intended that most determinations made by the [CPSC] will be in the form of general prescriptive rules, further amplifying the definition of electrical, mechanical, and thermal hazards set forth in the bill or the other categories of hazardous substances where necessary.

S.Rep.No.91–237, 91st Cong., 1st Sess. 5 (1969).

**7.** Certainly, if the general prescriptive approach employed by the CPSC in delineating the scope of coverage of the Small Parts Regulation satisfies the stringent Fifth Amendment due process requirements for criminal statutes, it follows *a fortiori* that, in view of the clear legislative support for choosing to address

that contention, *infra* pp. 77–79, we find that the general prescriptive approach employed here is proper for delineating the scope of coverage of the Small Parts Regulation.

▓ TMA next maintains that, notwithstanding the fact that the FHSA may provide the necessary statutory authority to enable the CPSC to promulgate the Small Parts Regulation, the CPSC in doing so must not adhere to the relatively lenient procedural requirements contained in the FHSA, but instead must comply with the more stringent procedural requirements contained in the CPSA.[8] This argument is premised on a very real policy concern, which was most aptly summarized by Judge MacKinnon of the United States Court of Appeals for the District of Columbia Circuit in *Forester v. Consumer Product Safety Commission,* 559 F.2d 774 (D.C.Cir.1977): "[I]t might be argued that the history of the CPSA indicates that the [CPSC] should not be permitted to evade the more strict procedural and review provisions of the CPSA by promulgating what are in effect consumer product safety standards in the guise of banning orders under the FHSA." *Id.* at 789 n.22.[9]

In response, the CPSC states that nothing in the language of the CPSA or in that Act's legislative history mandates that in attempting to remove unsafe products from the marketplace pursuant to the substantive authority of the FHSA, the CPSC must adhere to the more stringent procedural provisions contained in the CPSA. Indeed, the CPSC contends that both the language of the CPSA and its legislative history offer persuasive support for the CPSC's position that, whenever the FHSA provides an effective remedy, the CPSC normally is to attempt to remove unsafe products from the marketplace according to the substantive authority and the procedural provisions contained in that Act.

The language of the CPSA, as originally adopted, strongly favors the CPSC's position. Section 30(d) of that Act, which was codified as 15 U.S.C. § 2079(d), plainly states: "A risk of injury which is associated with consumer products and which could be eliminated or reduced to a sufficient extent by action taken under the [FHSA] . . . may be regulated by the [CPSC] only in accordance with the provisions of [that Act]." Although this section subsequently was amended,[10] the CPSC contends that the

---

product hazards by a general prescriptive approach whenever possible, such a general prescriptive delineation of the scope of coverage of the Small Parts Regulation, if not required by it, is at least consistent with the statutory intent.

8. When the CPSC utilizes its rulemaking authority pursuant to the FHSA, the CPSC must follow only the standard procedural provisions governing informal legislative rulemaking, contained in 5 U.S.C. § 553, and its actions are subject to review under the rather lenient standard of 5 U.S.C. § 706(2)(A) (agency action will be sustained unless shown to be arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law). When the CPSC utilizes its rulemaking authority pursuant to the CPSA, however, 15 U.S.C. § 2058 and § 2060 control, and these sections establish procedural requirements and review standards that are stricter than those contained in 5 U.S.C. §§ 553 and 706. Specifically, 15 U.S.C. § 2058 requires the CPSC to hold public hearings and prepare a transcript of the proceedings, and to make express findings concerning the need for and effect of its proposed action. Then 15 U.S.C. § 2060 provides that the agency

action is to be reviewed as if that action were the result of a formal adjudication process, *i. e.,* on the basis of substantial evidence on the record taken as a whole.

9. The *Forester* Court found it unnecessary to resolve this issue, for there the parties had proceeded under the assumption that the regulation at issue in that case, which also had been promulgated by the CPSC pursuant to its authority under the FHSA, properly was governed by the procedural requirements and review standard contained in 5 U.S.C. §§ 553 and 706.

10. 15 U.S.C. § 2079(d), amended by Pub.L. 94-284, § 16, 90 Stat. 510 (1976), currently reads (in relevant part):

A risk of injury which is associated with a consumer product and which could be eliminated or reduced to a significant extent by action under the [FHSA] . . . may be regulated under [the CPSA] only if the [CPSC] by rule finds that it is in the public interest to regulate such risk of injury under the [CPSA].

purpose of this later amendment was to grant the CPSC broader discretion in selecting the most effective statutory route to follow in remedying consumer product hazards, and was in no way intended to require the CPSC to adhere to the procedural provisions of the CPSA when operating under the substantive authority contained in other legislation. Regardless of the true purpose of this amendment,[11] we find nothing in its language to indicate that it was intended to displace the existing procedural provisions contained in the FHSA and to engraft onto that Act's substantive provisions the procedural provisions of the CPSA.

Moreover, the legislative history of the CPSA clearly demonstrates that Congress seriously considered repealing both the procedural and substantive provisions of the FHSA, along with other legislation dealing with particular aspects of consumer product safety, thus requiring the CPSC to proceed against consumer products hazards solely under the comprehensive provisions of the CPSA. However, the following language from the report of the Senate Labor and Public Welfare Committee, whose version of the bill eventually was adopted by Congress as the CPSA, leaves no doubt that repeal of any portion of the FHSA was expressly rejected:

> [I]t may well be preferable in some cases, as with the self-executing enforcement provisions under the [FHSA], to utilize the existing statutory authority for many years to come, rather than engage in duplicative regulation-making under the new bill. In short, this Committee is convinced that the statutory framework found in prior legislation has

continuing utility and should not lightly be discarded. Accordingly, rather than repeal these statutes, they are continued in full force and effect and are transferred to the new Agency. As a result, the Agency will be able to proceed under either Title III of the bill, or the substantive provisions of those laws, whichever is considered more advantageous.

S.Rep.No.92–835, 92d Cong., 2d Sess. 19–20 (1972).

Therefore, although we are aware that the only distinction between a banning order and a safety standard may lie in the CPSC's choice of statutory authorization for its action, the language of the CPSA, as well as the intent of Congress as expressed in that Act's legislative history, appears to sanction such a choice. If the CPSC's predictable desire to avoid the stringent procedural and review requirements of the CPSA by proceeding against consumer product hazards under the FHSA whenever both Acts provide an effective remedy should cause serious policy concerns, it is more appropriate for the Congress, rather than the courts, to take any necessary corrective action.

■ TMA's third challenge to the Small Parts Regulation involves the actual banning procedure employed whenever the CPSC has determined that a particular article should be removed from the marketplace. In this connection, TMA concedes that the CPSC adhered to the rulemaking procedures set forth in section 553 of the Administrative Procedure Act (5 U.S.C. § 553) in the process of promulgating the Small Parts Regulation. However, TMA argues that the subsequent pre-enforce-

---

Here, of course, the CPSC did not by rule find that regulation under the CPSA, rather than the FHSA, was in the public interest.

**11.** We express no opinion as to whether § 2079(d), as amended, might in some cases impose an implicit duty on the CPSC to undertake some sort of inquiry to determine under which substantive legislation it should proceed to address a problem in a manner that best serves the public interest. We do note, however, that in the present case, the CPSC (and before it, the FDA) had been proceeding, at least since 1973, pursuant to the clear statutory

command contained in the old version of § 2079(d), to address the problem of small parts under the legislative authority contained in the FHSA. When § 2079(d) was amended in 1976, the CPSC might well have concluded that whatever advantages could be gained by proceeding pursuant to the legislative authority contained in the CPSA would be more than offset by the additional delay entailed by the need to engage in a complete retracing of all previous steps to satisfy the more stringent procedural requirements of the CPSA.

ment CPSC "hearing" which the Small Parts Regulation grants to the manufacturer of an article that the CPSC considers to be a banned hazardous substance must also conform to the procedural requirements of 5 U.S.C. § 553.[12]

The CPSC maintains that the pre-enforcement hearing device provided by the Small Parts Regulation is not intended as a second rulemaking, but is only the initial stage of an enforcement proceeding which the CPSC has commenced because it considers that the particular article at issue violates the Small Parts Regulation. Moreover, the CPSC contends that this pre-enforcement "hearing" is extended only as a matter of courtesy, and not as a legal requirement, so as to accord to one the agency has investigated an opportunity to explain why enforcement action would be unwarranted.

We agree with the position advanced by the CPSC. The relevant legislative history clearly indicates that Congress intended that when an agency seeks to remove a hazardous product from the marketplace, pursuant to the authority contained in the FHSA, a one-step regulation process will suffice.[13] Furthermore, as the CPSC notes, if a manufacturer contests the determination that an article is being marketed in violation of the Small Parts Regulation, a federal court, and not the CPSC, will have the final say in the matter. Thus, given TMA's concession that the Small Parts Regulation was promulgated in accordance with the rulemaking procedures set forth in 5 U.S.C. § 553, the regulation properly becomes self-executing, and may operate to ban hazardous products without the need to engage in further rulemaking proceedings. We agree that the CPSC's decision to provide suspected violators with a pre-enforcement "hearing," although laudable, is in no sense mandatory. Consequently, whatever secondary "hearing" is provided need not conform to the procedural requirements of 5 U.S.C. § 553.

■■■ TMA's final contention is that the Small Parts Regulation violates the Fifth Amendment's due process proscription against unreasonably vague criminal statutes. We first acknowledge that criminal penalties conceivably could attach to a violation of the Small Parts Regulation,[14] and so we agree with TMA that the Small Parts Regulation should conform to the due process guidelines applicable to criminal statutes.

TMA contends that the objectionable vagueness is contained in the language that delineates the scope of coverage of the Small Parts Regulation. TMA complains that frequently, the non-exclusive listing of "covered products" contained in the Small Parts Regulation offers little aid in reaching a determination as to whether a particular article is "intended for children under three years of age," and that application to an "unlisted" article of the three non-determinative criteria, in the absence of any

---

**12.** The pre-enforcement hearing mechanism, as set forth in § 1501.5 of the Small Parts Regulation, 44 Federal Register 34892, 34904 (June 15, 1979), provides that the CPSC inform a suspected violator by letter that it or its products may become the subject of an enforcement action, and affords the suspected violator 10 days within which to submit evidence and arguments detailing why enforcement action would be inappropriate. If this pre-enforcement hearing were required to conform to 5 U.S.C. § 553, the reply period would have to be extended to 30 days, and any interested party, not just the suspected violator, would be entitled to submit views to the CPSC as to why enforcement action would be inappropriate.

**13.** The Conference Committee report accompanying the amendments to the FHSA contained in the Child Protection and Toy Safety Act of 1969, Pub.L. 91-113, 83 Stat. 187 (1969), clearly indicated that:

> The conference substitute [i. e., the version of the bill eventually passed by Congress] provides a one-step regulation process to control the marketing of children's articles which present electrical, mechanical, or thermal hazards. That is, only one proceeding (to determine if the article is a hazardous substance) is required to exclude the article from the market.

H.R.Rep.No.91-581, 91st Cong., 1st Sess. 6 (1969), reprinted in [1969] U.S.Code Cong. & Admin.News, pp. 1245, 1246.

**14.** See 15 U.S.C. § 1264.

articulated ranking or weighting of these criteria, may prove similarly unavailing. Moreover, TMA alleges that the CPSC, by interpreting the Small Parts Regulation to cover those articles whose "intended users group" includes children both over and under three years of age, has further compounded the vagueness problem.

■ In spite of the foregoing, we must point out that the due process guarantees of the Fifth Amendment never have required that all criminal statutes not drafted with crystal clarity be declared "void for vagueness." Indeed, the very subject matter sought to be regulated may introduce some unavoidable degree of vagueness into the statute at issue. *See Boyce Motor Lines v. United States*, 342 U.S. 337, 340, 72 S.Ct. 329, 330, 96 L.Ed. 367 (1952); *cf. National Association of Independent Television Producers and Distributors v. F. C. C.*, 516 F.2d 526, 539–40 (2d Cir. 1975) (FCC rule containing exemption for "children's programs," defined as "programs primarily designed for children aged 2 through 12," held not unconstitutionally vague). With these observations in mind, we analyze the scope of coverage language contained in the Small Parts Regulation.

First, we note that the non-exclusive listing of "covered products" provides a reasonable degree of guidance in assessing many articles (*e. g.*, certain products, although not specifically enumerated, can easily be determined to belong to the broad category of "crib" toys, toys which obviously are intended for children under three years of age). To the extent that it remains uncertain whether an "unlisted" article falls within the coverage of the Small Parts Regulation, we believe that application of the three non-determinative criteria[15] will resolve the issue satisfactorily in most, if not in all, cases. Although ranking or weighting of these criteria might produce an added degree of certainty, the CPSC's reluctance to take such action is understandable in view of former instances involving the mislabeling of articles clearly intended for children under three years of age.[16]

Furthermore, even though no one of these criteria will be considered dispositive, the manufacturer obviously has complete control in labeling a product as being one intended for children in a particular age group, and is not powerless to influence the advertising and promotion of a product in a manner consistent with its age group labeling. Therefore, if a manufacturer reasonably labels an article as being intended for children over three years of age, and takes steps to insure that the article is so advertised and promoted, we cannot perceive how the general public could form an impression that the article actually is intended for children under three years of age as well. For all practical purposes, it appears to us that the manufacturers themselves are fairly capable of taking action to remove any doubts as to whether a particular article falls within the coverage of the Small Parts Regulation.[17]

Finally, even assuming that the Small Parts Regulation contains a residual amount of impermissible vagueness, the CPSC has indicated its willingness to review any articles presented to it to determine whether those articles fall within the scope of coverage of the Small Parts Regulation.[18] New products, which the manufacturer may feel are "borderline," may be submitted to the CPSC during their design

---

15. See footnote 3 *supra*.

16. The CPSC referred to these past instances of mislabeling in the course of promulgating its October 1978 version of the Small Parts Regulation. *See* 43 Federal Register 47684, 47686-87 (Oct. 16, 1978).

17. The only inquiry relevant for determining whether a particular article is within the scope of coverage of the Small Parts Regulation is whether some of the intended users of the article are under three years of age. The fact that articles are covered, not all of whose intended users are under three years of age, although admittedly broadening the range of articles covered, does not add measurably to the difficulty in identifying whether a particular article is within the scope of coverage of the Small Parts Regulation.

18. *See* 44 Federal Register 34892, 34901 (June 15, 1979): "if an industry member needs advise

and development stage, so that any potential future problems may be avoided at minimal inconvenience and expense to the manufacturer. Because we believe. that manufacturers, either by reference to the listing of "covered products," by application of the three nondeterminative criteria, or by requesting a determination from the CPSC, will be able in all cases to know in advance how to avoid an unlawful course of action, we find TMA's challenge to the Small Parts Regulation on the ground that the regulation is impermissibly vague to be without merit.

The petition to review the CPSC's promulgation of the Small Parts Regulation is denied.

[sic] on the applicability of the regulation to a particular toy, the [CPSC] staff will be happy to provide it, either before or after the regulation becomes effective."