**UNITED STATES of America, Plaintiff,**

v.

**SUN AND SAND IMPORTS, LTD., INC., and Guido Muller, individually and as President of Sun & Sand, Defendants.**

No. 83 Civ. 3350.

United States District Court, S.D. New York.

May 27, 1983.

Barbara L. Schulman, Asst. U.S. Atty., New York City, Randy S. Chartash, Consumer Litigation, Dept. of Justice, Margot deFerranti, Consumer Product Safety Comm., Washington, D.C., for plaintiff.

Strassberg & Strassberg, New York City, for defendants.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiff United States commenced this action against Sun and Sand Imports Ltd., Inc. ("Sun and Sand") and Guido Muller seeking a preliminary injunction prohibiting defendants from importing, selling, or offering for sale certain children's garments pending the resolution of administrative proceedings against Sun and Sand before the Consumer Product Safety Commission ("CPSC"). Plaintiff contends that these items of clothing, identified as "Footsie" and "Nectarine," do not comply with the regulations setting forth the requirements for flame resistance enacted pursuant to the Flammable Fabrics Act, 15 U.S.C. §§ 1191–1204 ("FFA") as set forth in 16 C.F.R. § 1615.3 *et seq.* (1982) (the "flammability standard").[1] Defendants argue that the regulations implementing the flammability standard with respect to children's

---

1. Plaintiff initially sought an injunction with respect to two other Sun and Sand children's garments identified as "Antoinette" and "Pavil." Defendants have stipulated that they will not import or sell Pavil or Antoinette pending the resolution of the CPSC administrative proceeding or a determination by this court that the regulations at issue here are impermissibly vague. In view of the determination, *infra* at p. 6, that the regulations at issue are not void for vagueness, defendants' stipulation with regard to Pavil and Antoinette remains in effect and the court does not consider those garments in this decision.

sleepwear are impermissibly vague thereby violating defendants' Fifth Amendment right to due process. In the alternative, defendants argue that plaintiff is not entitled to an injunction because it has not made the requisite showing that Footsie and Nectarine are sleepwear garments subject to the flammability standard. On May 10, 1983, the court held a hearing and now makes the following findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

### Background

Footsie and Nectarine are garments sold in sizes which fit infants and toddlers. Footsie and Nectarine have no trim and are made of soft stretchable fabric. Because the garments have attached feet, they cover the child's entire body except the head and hands. They also have a front zipper opening which runs from the neck to the crotch of the garment.

On February 7, 1983, the enforcement division of the CPSC issued a complaint alleging that defendants were marketing children's garments that did not comply with the flammability standard. The complaint triggered a proceeding which will culminate in a final administrative determination by the CPSC as to whether Footsie and Nectarine violate the flammability standard. Plaintiff filed the instant action seeking to enjoin defendants from marketing those garments pending the CPSC's final determination.

### Discussion

The regulations at issue here subject items of children's sleepwear to the flammability standard. 16 C.F.R. §§ 1615.1(c) and 1615.2(b) (1982). Children's sleepwear is defined as

> any product of wearing apparel up to and including size 6X, such as nightgowns, pajamas, or similar or related items, such

as robes, intended to be worn primarily for sleeping or activities related to sleeping. Diapers and underwear are excluded from this definition.

16 C.F.R. § 1615.1(a). In addition, the CPSC uses the following factors to determine whether an item of children's clothing is sleepwear within the meaning of the regulations: the nature of the product and its suitability for use by children for sleeping and activities related to sleeping; the manner in which the product is distributed and promoted; and the likelihood that the product will be used primarily for sleeping or activities related to sleeping in a substantial number of cases.[2]

Defendants first argue that these regulations are unconstitutionally vague because they fail to define the term sleepwear with adequate specificity. Defendants contend that violation of the flammability standard will subject them to both civil and criminal penalties and that the specificity of these regulations therefore must be subjected to a high degree of scrutiny.

■ Where, as here, a law not regulating expression is challenged as being void for vagueness, the court must determine whether the provision at issue is so vague that it offered no warning to the party challenging the law that his conduct was prohibited. *See United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975); *Parker v. Levy,* 417 U.S. 733, 755–56, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974). As the Supreme Court stated recently in *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 498–99, 102 S.Ct. 1186, 1193, 71 L.Ed.2d 362 (1982), the degree of vagueness which is constitutionally permissible depends in part on the nature of the enactment.

> The Court has ... expressed greater tolerance of enactments with civil rather

---

**2.** When CPSC issued the complaint against defendants on February 7, 1983, these three factors were set forth in the regulations at 16 C.F.R. § 1615.64 (1982). For reasons concerning other portions of that provision, 16 C.F.R. § 1615.64 was revoked in its entirety after the complaint against defendants had issued. 48

Fed.Reg. 6329 (1983). Defendants, however, do not dispute that these three factors are still used by the CPSC and will be used in the administrative proceeding to determine whether Footsie and Nectarine are subject to the flammability standard.

than criminal penalties because the consequences of imprecision are qualitatively less severe. And the court has recognized that a scienter requirement may mitigate a law's vagueness.

In addition, vagueness in economic regulation is more likely to be permissible, particularly when the regulated enterprise may be able to clarify the meaning of a rule by its own inquiry or by resorting to the administrative process. *See Hoffman Estates v. The Flipside, supra,* 455 U.S. at 498, 102 S.Ct. at 1193; *Toy Manufacturers of America, Inc. v. Consumer Products Safety Commission,* 630 F.2d 70, 78 (2d Cir.1980).

█ The CPSC in the pending administrative proceeding against defendants seeks only an order directing them to cease and desist in the future from importing and distributing the garments at issue.[3] However, even under the strict standard applicable to economic regulations entailing criminal sanctions, the sleepwear standard at issue here is sufficiently specific. *See Toy Manufacturers of America, Inc. v. Consumer Products Safety Commission, supra.* In *Toy Manufacturers,* the Second Circuit rejected a vagueness challenge to a regulation entailing criminal sanctions which was applicable to "toys and other articles intended for use by children under three years of age." The Second Circuit relied upon that regulation's incorporation of three criteria for classifying children's toys which are remarkably similar to the three factors weighed by the CPSC in determining whether an item of children's clothing is sleepwear.[4] The following factors also were relevant to the determination that the regulation in *Toy Manufacturers* was not

impermissibly vague: the regulation's inclusion of a non-exclusive list of covered articles, the agency's willingness to provide advice to manufacturers prior to the distribution of any article, and the manufacturer's ability to comply with the regulation through proper labeling and promotion.

In the instant case, it is difficult to envision a regulation listing different articles of children's sleepwear in the manner in which toys and other childcare articles were listed in the regulation at issue in *Toy Manufacturers.* However, the CPSC provides such specific guidelines with regard to the type of sleepwear garments by publishing cease and desist orders clearly describing noncomplying clothing. *See* 47 Fed.Reg. 32762 (1982). With regard to the agency's willingness to provide manufacturers with predistribution advice concerning compliance with the regulation, testimony in the record indicates that the CPSC did provide such advice to entities distributing children's clothing. Finally, the record also establishes that in certain instances, a manufacturer can label and market children's garments in such a manner that the CPSC will not regard them as sleepwear. The evidence with regard to defendants suggests that they did not so label and market these garments. *See* p. 9 *infra.* The court therefore concludes that the regulations defining children's sleepwear provided as much guidance to manufacturers as did the regulation approved in *Toy Manufacturers* and therefore offered defendants constitutionally adequate notice as to the nature of the prohibited conduct.

---

**3.** Defendants refer to the civil penalties that section 5 of the FFA, 15 U.S.C. § 1194, borrows from section 5(1) of the Federal Trade Commission Act, 15 U.S.C. § 45(1). Because these penalties are applicable only when a party violates an agency order, defendants do not face such civil penalties for conduct preceding a definitive administrative determination as to whether Footsie and Nectarine violate the FFA. The criminal penalties of the FFA are applicable only to willful violations of that statute. 15 U.S.C. § 1196. Arguably, a violation of the FFA might be willful only if it follows the issuance of a cease and desist order. In view of the court's conclusion below that the regula-

tions at issue are not impermissibly vague under the stricter standard applicable to rules involving criminal penalties, the court need not determine whether defendants could be criminally liable for conduct preceding the issuance of a CPSC cease and desist order.

**4.** The criteria in the regulation at issue in *Toy Manufacturers* were: "(1) the manufacturer's stated intent (such as on a label) if it is a reasonable one; (2) the advertising promotion and marketing of the article; and (3) whether the article is commonly recognized as being intended for children under three." *Toy Manufacturers, supra,* 630 F.2d at 73 n. 3.

■ Defendants argue that even if the regulations at issue are not so vague as to be unenforceable, plaintiff nevertheless has failed to make a showing sufficient to entitle it to an injunction. Defendants concede that the fabric used in Footsie and Nectarine does not comply with the flammability standard, but assert that the garments are playwear and not sleepwear and that the flammability standard therefore is inapplicable to them.

With regard to plaintiff's burden, the parties agree that as there is no authority setting forth the required showing for an injunction under section 6 of the FFA, 15 U.S.C. § 1195, and that the court should look to the standard applicable to preliminary injunctions under section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) ("section 13(b)"). The court agrees that in view of the FFA's substantial borrowing of enforcement procedures from the Federal Trade Commission Act, see 15 U.S.C. § 1194, application here of the standard for an injunction under section 13(b) is appropriate. In order to obtain a preliminary injunction under section 13(b), the government need not show a probability of success on the merits, but need only demonstrate "questions going to the merits so serious, substantial, difficult and doubtful as to make them fair ground for thorough investigation . . . and determination by the [agency] in the first instance." *Federal Trade Commission v. Lancaster Colony Corp.,* 434 F.Supp. 1088, 1091 (S.D.N.Y. 1977); *see* H.R.Rep. No. 624, 93rd Cong., 1st Sess. 31 (1971)[5]. The court therefore concludes that if plaintiff has raised a serious question as to whether Footsie and Nectarine are sleepwear within the regulation, a preliminary injunction should issue.

An evaluation of the evidence in light of the factors used by the CPSC indicates that the plaintiff has raised a serious question as to whether Footsie and Nectarine are sleepwear within the meaning of the regulation. With regard to the nature of the garments, the CPSC made its determination on the basis of several factors: design, body coverage, trim, openings, and the softness and comfort of the fabric. The evidence supports the CPSC's conclusion that their fabric and construction make Footsie and Nectarine suitable for use as sleepwear. Defendants assert that the CPSC's conclusion is irrational because Footsie and Nectarine differ only in their attached feet from a Sun and Sand garment which Elizabeth Gomilla, an enforcement officer of the CPSC, identified as playwear during the hearing. Defendants make this assertion on the basis of a 1978 memorandum in which Gomilla stated that the presence of attached feet, without more, is not a dispositive indication that a child's garment is sleepwear. The statement in the memorandum, however, was made with regard to footed garments which, unlike Footsie and Nectarine, are made of fabric not typically used in sleepwear.[6] The CPSC could have reasonably concluded that because of the attached feet as well as their overall construction and fabric, Footsie and Nectarine are sleepwear garments.

---

**5.** Section 13(b) also requires the government to demonstrate that the "equities" weigh in favor of issuance of a preliminary injunction. *See F.T.C. v. Lancaster Colony Corp., supra,* 434 F.Supp. at 1090–91. Defendants argue that as a matter of equity plaintiff's motion for a preliminary injunction is barred by laches in view of the delay between the CSPC's 1981–1982 investigation of defendants and plaintiff's request for this injunction. In fact, less than three months elapsed between the February 7, 1983 administrative complaint against defendants and this request for a preliminary injunction. Moreover, defendants have not suggested any way in which the delay has unfairly prejudiced their case. The court therefore finds that this request for an injunction is not barred by laches. Defendants otherwise concede that should plaintiff make the required showing that Footsie and Nectarine are sleepwear, the equities favor the issuance of a preliminary injunction.

**6.** The 1978 memorandum provided in relevant part (emphasis added):

[T]he garment design feature of attached feet was until recently used almost exclusively in sleepwear; however, recent market trends and consumer preference has *resulted in the use of this design feature in conjunction with fabric typical of playwear.* Such garments as illustrated by consumer responses during the development of the garment evaluation procedure are purchased and used for playwear *not* sleepwear.

With regard to the second factor of distribution and promotion of the garments, defendants argue that they promoted Footsie and Nectarine exclusively as playwear and attached to the plastic bags containing the garments labels indicating that the garments were not intended for use as sleepwear. Plaintiff, however, introduced sufficient evidence to suggest that defendants did not uniformly market Footsie and Nectarine on that basis and that defendants' techniques for promoting the garments as playwear were ineffectual. Plaintiff introduced reports of investigations concerning the sale of Footsie and Nectarine at nine small children's clothing stores in the New York area. In one store, the management indicated that Footsie and Nectarine would be sold to a customer seeking sleepwear. In two other stores, defendants' garments were intermingled with garments plainly intended for use as sleepwear. In two other stores, CPSC inspectors noted that the garments at issue were offered for sale without their protective labeling. Finally, management in yet another store inspected indicated that it had received no direction from defendants as to how to market Footsie and Nectarine. The court concludes that plaintiff has raised a fair question as to whether defendants effectively have promoted and labelled the garments at issue as playwear rather than sleepwear.

Finally, with regard to its determination that Footsie and Nectarine will be used as sleepwear in a substantial number of cases, the CPSC relied upon the similarity of those garments to clothing promoted as sleepwear in the catalogues of nationwide retailers and to garments recognized as "classical" sleepwear garments. Defendants argue that no confusion by consumers is likely because Footsie and Nectarine are sold in specialty shops and are more costly than the children's sleepwear marketed by national retailers. In fact, the evidence adduced at the hearing suggests that the price differ-ence between Footsie and Nectarine and the nationally marketed sleepwear is not substantial. Moreover, the court cannot reject as unreasonable the CPSC's contention that the expectations of consumers purchasing children's garments in specialty shops are shaped by the marketing strategies of the major nationwide retailers. Plaintiff thus has raised a serious question as to whether the garments at issue will be used as sleepwear in a substantial number of instances.

Plaintiff has introduced substantial evidence suggesting that under the criteria used by the CPSC, Footsie and Nectarine may be garments "intended to be worn primarily for sleeping."[7] 16 C.F.R. § 1615.1(a). Under the relevant standard, this showing is sufficient to entitle plaintiff to the issuance of a. preliminary injunction.

### Conclusion

For the foregoing reasons, defendants, their successors in office, agents, employees and all other persons in active concert and participation with them are enjoined from importing, selling, or offering for sale children's garments identified as Footsie and Nectarine pending the resolution of administrative proceedings before the CPSC entitled *In re Sun and Sand Imports, Ltd.,* CPSC Docket No. 83–1.

So Ordered.

---

7. In view of the plaintiff's showing that Footsie and Nectarine are garments intended primarily for use as sleepwear, the court does not reach defendants' contention that the CPSC imper-missibly seeks to extend the flammability standard to children's garments used as sleepwear only incidentally.