**FRANKLIN SAVINGS ASSOCIATION and Franklin Savings Corporation, Plaintiffs,**

v.

**DIRECTOR OF the OFFICE OF THRIFT SUPERVISION, Defendant,**

and

**United States of America, Defendant–Intervenor.**

No. 90–4054–S.

United States District Court, D. Kansas.

June 22, 1990.

---

Charles W. German, David E. Everson, Jr., Brant M. Laue, Richard F. Hunter, Stinson, Mag & Fizzell, Kansas City, Mo., Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, Kan., Cheryl Johnson, Graham & James, Los Angeles, Cal., for plaintiffs.

Thomas J. Segal, Assoc. Chief Counsel, Elizabeth R. Moore, Sr. Trial Atty., James Hendrickson, Trial Atty., Office of Thrift Supervision, Washington, D.C., Nancy L. Ulrich, Asst. Atty. Gen., Topeka, Kan., Paul W. Grace, Steven W. Dimmick, Mary Boney Denison, Linda Hitt Thatcher, Paul J. Kennedy, Graham & James, Washington, D.C., Lee Thompson, U.S. Atty., Topeka, Kan., Stuart M. Gerson, Asst. Atty. Gen., Theodore C. Hirt, Mark Batten, Gary Orseck, Attys., Dept. of Justice, Civ. Div., Thomas J. Loughran, Susan B. Bovee, H. Lowell Brown, Finkelstein, Thompson & Loughran, Washington, D.C., Jan Hamilton, Hamilton, Peterson, Tipton & Keeshan, Topeka, Kan., for defendant.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on plaintiffs' first motion for summary judgment (doc. 56); defendant Director of Office of Thrift Supervision ("OTS") and defendant-intervenor United States of America's ("USA") joint motion to dismiss, or for summary judgment (doc. 169); defendant OTS's amended motion to dismiss for mootness (doc. 178); plaintiffs' motion to strike pleadings of, or to dismiss, defendant USA as a party (doc. 201); defendant OTS's motion to dismiss, or for summary judgment on, Counts IX–X, XIII–XX of the supplemental complaint (doc. 232); and plaintiffs' third motion for summary judgment (doc. 239). These motions involve the validity and effect of the action taken by Director T. Timothy Ryan ("Director Ryan") on June 1, 1990, or the constitutionality of the appointment of M. Danny Wall as Director of OTS. On June 1, 1990, Director Ryan issued an order purporting to accomplish three things: (1) ratification of Director Wall's appointment of conservator for Franklin on February 15, 1990, based on the administrative record considered by Director Wall in February 1990; (2) ratification of the February 15, 1990, appointment based on a new expanded administrative record which included matters discovered after February 15, 1990; and (3) the appointment of the Resolution Trust Corporation ("RTC") as a new conservator as of June 1, 1990, based on the expanded administrative record.

A moving party is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Maughan v. SW Servicing, Inc.*, 758 F.2d 1381, 1387 (10th Cir.1985). In these motions, the parties seek resolution of the following issues: (1) whether Director Ryan had the authority to ratify Director Wall's February 15, 1990, appointment of a conservator for Franklin, and thus cure any constitutional defect that may have tainted Director Wall's action; (2) whether Director Wall was constitutionally appointed, and whether his action on February 15, 1990, is constitutionally valid;

and (3) whether Director Ryan had the authority to appoint the Resolution Trust Corporation ("RTC"), a second time, as conservator during the pendency of the February 15, 1990, conservatorship. The material facts that the court must consider in resolving these issues are not in dispute. Also, these issues are strictly legal questions. Thus, these issues are ripe for summary judgment.

## I. DIRECTOR RYAN'S PURPORTED RATIFICATION OF DIRECTOR WALL'S APPOINTMENT OF CONSERVATOR.

### A. *Background.*

M. Danny Wall was the chairman of the Federal Home Loan Bank Board ("FHLBB") on August 9, 1989, the date on which the Financial Institution's Reform, Recovery and Enforcement Act of 1989 ("FIRREA") was enacted. Chairman Wall was appointed to the office of Director of OTS under the "transitional provision" of Section 301 of FIRREA. This provision provides, in part:

> the Chairman of the Federal Home Loan Bank Board on the date of enactment of the Financial Institutions Reform, Revisions, and Enforcement Act of 1989, shall be the director [of OTS] until the date on which the individual's term as Chairman of the Federal Home Loan Bank Board would have expired. Public Law No. 101–73, § 301, 103 Stat. 183, 278 (to be codified at 12 U.S.C. § 1462a(c)(5)).

Pursuant to this provision, Wall was acting as director of OTS when he appointed the RTC as conservator of Franklin on February 15, 1990. (See OTS Order 90–368).

Prior to the appointment of conservatorship, Director Wall had announced his intentions to resign his position as director of OTS. On March 23, 1990, President Bush nominated T. Timothy Ryan for the position of director of OTS. On April 4, 1990, the United States Senate confirmed Ryan's nomination and he was sworn into office on April 9, 1990. On June 1, 1990, Director Ryan issued an order ratifying the February 15, 1990, appointment of conservator for Franklin. (OTS Order No. 90–1036).

### B. Can Director Ryan Ratify the Appointment of Conservator Made by Director Wall?

Defendants jointly move to dismiss, as moot, Count V of plaintiffs' complaint, which contends that Director Wall lacked constitutional authority to appoint a conservator for Franklin. Defendants move to dismiss since Director Ryan, an undisputed constitutionally appointed officer, has now ratified the February 15, 1990, appointment. Plaintiffs contend, however, that Director Ryan lacks the authority to ratify the appointment made by his predecessor and the attempted ratification is invalid. Plaintiffs have moved for summary judgment on Count XX of their supplemental complaint, which contends that Director Ryan's attempted ratification is invalid.

■ First, plaintiffs argue that Director Ryan's decision to ratify Wall's earlier appointment of conservator is nothing more than a litigation tactic, which attempts to destroy this court's jurisdiction to review the original appointment. Although the timing of Director Ryan's action is curious,[1] the court declines the invitation to rule that the June 1, 1990, ratification is a litigation tactic to destroy jurisdiction and thus invalid. Instead, the court chooses to address the more substantive arguments regarding Director Ryan's action on June 1, 1990.

■ With regard to the substantive arguments, plaintiffs argue that since Director Ryan did not have the power as of February 15, 1990, to appoint the conservator, he cannot retroactively ratify such action which occurred on that date. The concept of ratification is rooted in the law of agency. Ratification has been defined as the

"affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."

Restatement (Second) of Agency, Section 82, at 210 (1957). It is recognized that a public officer may ratify the act of another officer. See United States v. Heinszen & Co., 206 U.S. 370, 382, 27 S.Ct. 742, 745, 51 L.Ed. 1098 (1907). ("That the power of ratification as to matters within their authority may be exercised by Congress, state governments, or municipal corporations, is also elementary.") Nevertheless, for a ratification to be effective, the ratifying person or entity must have had authority to do the underlying act both at the time of the original act and at the time of ratification. Restatement (Second) of Agency, § 84(2) at 213 (1957). ("An act which, when done, the purported ... principal could not have authorized, he cannot ratify....."); see also Western Nat'l Bank v. Armstrong, 152 U.S. 346, 352, 14 S.Ct. 572, 575, 38 L.Ed. 470 (1894) ("It is scarcely necessary to say that a ratification, to be efficacious, must be made by a party who had power to do the act in the first place....")

The court agrees with plaintiffs that since Director Ryan had no power to appoint a conservator for Franklin on February 15, 1990, he lacked the power on June 1, 1990, to ratify the earlier appointment. Moreover, Director Ryan is not and never was Director Wall's principal, and thus, cannot ratify Director Wall's act.

Defendant OTS argues that the proper analysis of the ratification, in the present case, is to view both Directors Wall and Ryan as agents and the principal being Congress. Citing Restatement (Second) of Agency § 93 at 242, OTS contends that Ryan is authorized to ratify for his principal the unauthorized acts of another agent (Wall). The court cannot accept this proposed analysis, for Congress has never authorized Ryan to ratify the appointment of conservator made by his predecessor.

■ Finally, in his ratification order of June 1, 1990, Director Ryan indicated that the ratification was made pursuant to his

---

1. Ryan purportedly ratified the earlier appointment on June 1, 1990, the last day for discovery and for the filing of dispositive motions as set out in the Magistrate's scheduling order. Also, on that same day, OTS was able to prepare and file a motion to dismiss, on the grounds of mootness, plaintiffs' claim regarding the constitutionality of Director Wall's appointment.

authority as director of OTS and "pursuant to the authority delegated to me by the President of the United States and the Secretary of the Treasury." OTS Order 90–1036. The court finds that any authority delegated to Director Ryan from either President Bush or Secretary Nicholas Brady did not include the authority to ratify the appointment of a conservator for Franklin. Congress did not delegate the power to appoint a conservator to either the President or to the Department of Treasury, but instead specifically delegated this authority solely to the director of the Office of Thrift Supervision. Section 301 of FIRREA states:

> "Notwithstanding any other provision of law, the Director [of OTS] shall have the power and jurisdiction to appoint a conservator or receiver for an insured State savings association, if the Director determines that any of the ... grounds for the appointment of a conservator or receiver exists...."

Public Law 101–73, 103 Stat. at 291 (to be codified at 12 U.S.C. § 1464(d)(2)(C)).

 Moreover, the President has no inherent power that would allow him to appoint a conservator for Franklin except pursuant to congressional or constitutional authority. *See Youngstown Sheet and Tube Co. v. Sawyer*, 343 U.S. 579, 585, 72 S.Ct. 863, 865, 96 L.Ed. 1153 (1952). ("The President's power, if any, to issue [an order seizing private property] must stem either from an act of Congress or from the Constitution itself.") Since neither President Bush nor Secretary Brady has the authority to appoint a conservator, each, likewise, lacks the power to ratify the appointment of a conservator. Thus, they also lack the power to delegate any such authority to Director Ryan.

For the foregoing reasons, the court finds that Director Ryan lacked authority to ratify the February 15, 1990, appointment of conservator for Franklin, and thus, Director Ryan's June 1, 1990, ratification of that order is invalid. Therefore, the court will grant summary judgment for plaintiffs on Count XX of their supplemental complaint. Since the purported June 1,

1990, ratification of the February 15, 1990, appointment of conservatorship is ineffective, the joint motion to dismiss or for summary judgment on grounds of mootness is itself rendered moot. Furthermore, the issue of the validity of the February 15, 1990, appointment is still a viable issue, including the issue of the constitutionality of Director Wall's action.

## II. CONSTITUTIONALITY OF DIRECTOR WALL'S ACTION.

### A. *Background.*

The necessary factual background for the resolution of this matter is the same background information discussed above regarding ratification. Also, the parties have stipulated that M. Danny Wall was nominated by the President and confirmed by the Senate to serve as Chairman of the FHLBB. However, it also has been stipulated that Wall was never nominated by the President to serve as Director of OTS and was never confirmed by the Senate for that office. Pretrial Order at § 6(d)–(f).

### B. *Whether Director Wall was Appointed in Violation of the Appointments Clause of the United States Constitution.*

 The Appointments Clause of the United States Constitution mandates that the President

> "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law; but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."

U.S. Const., art. II, § 2, cl. 2.

An "officer of the United States" as the phrase is used in the Appointments Clause is "any Appointee exercising significant authority pursuant to the laws of the United States." *Buckley v. Valeo*, 424 U.S. 1, 126,

96 S.Ct. 612, 685, 46 L.Ed.2d 659 (1976). Two classes of officers are recognized in the appointments class—"principal" officers and "inferior" officers. *Id.* at 132, 96 S.Ct. at 688. Principal officers must be selected by the President with advice and consent of the Senate; whereas Congress may allow the President alone, or heads of governmental departments, or the judiciary to appoint inferior officers. *Id.*

It is clear to this court that FIRREA granted the director of OTS sweeping regulatory powers over the thrift industry, with very limited oversight either by the Secretary of Treasury or the courts. Considering the powers provided to the director under FIRREA, the court finds that the director is definitely a "principal" officer, and thus under the dictates of the Appointments Clause, the director must be appointed by the president with the advice and consent of the Senate.

█ In the rush to quickly deal with the savings and loan crisis in this nation, Congress drafted FIRREA with a "transitional provision" which called for the chairman of the Federal Home Loan Bank Board to become the first director of the newly created Office of Thrift Supervision on the date FIRREA was enacted. In effect, Congress passed a bill which not only created a new administrative agency and provided that agency with new powers, but also designated and selected the person who would serve as its first director.[2] This court finds that there can be no doubt that this innovative and politically expedient statutory method of selecting the director of OTS is wholly unconstitutional. The method for the appointment of the director as set out in Section 301 of FIRREA is not the method called for in the Appointments Clause of the United States Constitution.

Although Chairman Wall was unconstitutionally appointed to serve as director of OTS, a legal question remains whether he had authority to act as director, in any event, under the doctrine of *"de facto* officer."

## C. *Whether Wall had Authority to Appoint a Conservator for Franklin as a de facto Officer.*

█ Notwithstanding the constitutionally defective appointment of Director Wall, this court finds that plaintiffs' challenge to his action, based on the defective appointment, must fail under the time-honored doctrine of *"de facto* officer." This doctrine provides that when, as in the present case, plaintiffs challenge government action on the ground that the official who took the action was improperly in office, the challenged acts of the officer will be upheld against such challenge in the interest of the public. *Horawitz v. Board of Medical Examiners,* 822 F.2d 1508, 1516 (10th Cir.), *cert. denied* 484 U.S. 964, 108 S.Ct. 453, 98 L.Ed.2d 394 (1987). The doctrine exists to prevent wholesale invalidation of an improperly appointed official's acts, and thus prevents interference with orderly government. *Id.* at 1516; *see also Waite v. Santa Cruz,* 184 U.S. 302, 323, 22 S.Ct. 327, 334, 46 L.Ed. 552 (1902); *Jessen v. United States,* 242 F.2d 213, 215 (10th Cir.1957).

Plaintiffs argue that the court should adopt and apply a limited exception to the *de facto* officer doctrine. Such a limited exception has been recognized by a panel of the Circuit Court of Appeals for the District of Columbia. *Andrade v. Lauer,* 729 F.2d 1475, 1499 (D.C.Cir.1984). The D.C. Circuit stated that an exception to the *de facto* officer doctrine may exist in limit-

**2.** The court is aware that the legislation proposed by President Bush to reform the regulation of the savings and loan industry included the "transitional provision" of FIRREA which called for the appointment of Wall as director of OTS. Also, the court is aware that President Bush signed FIRREA, including the "transitional provision," into law. The fact that the President signed FIRREA into law does not cure any defect caused by the failure of the President to appoint, with the advice and consent of the Senate, the director of OTS as required by the Appointments Clause of the United States Constitution. Other laws signed by the President have been struck down by the Supreme Court as a violation of the executive power despite the fact that the President had signed the bill into law. *See e.g., Bowsher v. Synar,* 478 U.S. 714, 106 S.Ct. 3181, 92 L.Ed.2d 583 (1986); *I.N.S. v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

ed situations when the plaintiff brings his action at or around the time of the challenged government action and when the plaintiff has shown that the agency involved had reasonable notice of the claimed defect in the officer's authority to act. *Id.*

This court finds that the common good is best served by protecting the acts taken by Wall while acting as director of OTS. The actions taken by the government in an attempt to deal with the crisis in the thrift industry is certainly of national concern. If the court were to place the early actions of the OTS in jeopardy because of Wall's defective appointment, great chaos could result throughout the savings and loan industry. The Tenth Circuit has never commented on the narrow exception to the *de facto* officer doctrine recognized by the D.C. Circuit. However, this court believes that even if the Tenth Circuit recognized the narrow exception, the exception would still not apply to the present case; for if it were applied, widespread invalidation of OTS's decisions and the disruption of orderly regulation of the thrift industry would most likely result. *C.f. Horawitz*, 822 F.2d at 1516. Thus, this court refuses to apply any exception to the *de facto* officer doctrine in this case.

■ Finally, the court finds that, in any event, it would simply not be prudent to invalidate the past actions of Director Wall solely on the grounds of his defective appointment. Thus, in addition to relying on the *de facto* officer doctrine, the court chooses to exercise its remedial discretion and further finds that invalidating Director Wall's appointment of conservator for Franklin because of his defective appointment is not an available remedy for Count V of plaintiffs' amended complaint. Such remedial and discretionary power has been recognized by the Supreme Court. *Buckley v. Valeo*, 424 U.S. at 142, 96 S.Ct. at 693 (Supreme Court refused to invalidate past acts of the Federal Election Commission despite the Court's holding that the commissioners' appointments violated the Appointments Clause); *see also Andrade*, 729 F.2d at 1499, n. 39.

For the above discussed reasons, the court will grant defendants' joint motion for summary judgment on Count V of plaintiffs' amended complaint. The court finds that although Director Wall was not appointed in compliance with the Appointments Clause of the United States Constitution, his acts as director, including the appointment of conservator for Franklin on February 15, 1990, should be protected from challenges on the ground of his unconstitutional appointment due to the public interest in orderly regulation of the savings and loan industry. Nevertheless, the merits of Director Wall's action in appointing the conservator for Franklin remain as a viable issue in this case.

III. DIRECTOR RYAN'S JUNE 1, 1990, SECOND APPOINTMENT OF THE RTC AS CONSERVATOR FOR FRANKLIN.

A. *Background.*

On June 1, 1990, Director Ryan signed and issued a "Ratification and Appointment Order." OTS Order No. 90–1036. Although Director Ryan's predecessor had already appointed the RTC as conservator for Franklin, Director Ryan purported to again make a new and independent appointment of the RTC as conservator for Franklin. It is undisputed that Director Ryan did not seek or obtain any written approval for this second appointment from David Douglass, Commissioner of Kansas Savings and Loan Department. Douglass is the state authority responsible for state savings associations, including Franklin.

B. *Does Director Ryan have Statutory Authority to Make a Second Appointment of Conservatorship During the Pendency of an Existing Conservatorship?*

■ The court finds that there is no statutory authority under FIRREA for the appointment of multiple, concurrent conservatorships of a savings association. The statutory language clearly indicates that a director is only entitled to appoint one conservator at a time. The statutory language states that

"the Director shall have power and jurisdiction to appoint *a conservator ....*" FIRREA, Pub.L. No. 101–73, § 301, 103 Stat. at 291 (to be codified at 12 U.S.C. 1464(d)(2)(C)). A singular appointment is provided for in this section of FIRREA. The court is aware that in certain situations statutory language purporting the singular has been held to include and apply to several persons, parties or things. *See* 1 U.S.C. § 1. However, this rule should be applied only when it is necessary to carry out the clear intent of the statute. *See Toy Mfrs. of Amer., Inc. v. Consumer Product Safety Comm.,* 630 F.2d 70, 74 (2d Cir. 1980). The court finds that the director's interests are protected as long as his initial conservator is in place. It is not necessary, to effectuate the intent and purpose of FIRREA, to allow the director to appoint a second conservator as long as the first conservator is in control of the association.

Moreover, FIRREA specifically provides for a mechanism for replacing an existing conservator. Section 5(d)(2)(F) of the Home Owners Loan Act of 1933 ("HOLA"), as amended by Section 301 of FIRREA provides that

> "The Director may, without any prior notice, hearing, or other action, replace a conservator with another conservator or with a receiver, but such replacement shall not affect any right which the association may have to obtain judicial review of the original appointment, except that any removal under this subsection shall be removal of the conservator or receiver in office at the time of such removal."

FIRREA, Pub.L. No. 101–73, § 301, 103 Stat. at 292 (to be codified at 12 U.S.C. 1464(d)(2)(F)). OTS admits that in appointing the second conservator on June 1, 1990, it was in no way attempting to replace the conservator appointed on February 15, 1990. Since Congress specifically provided a method for appointing a second conservator via the replacement provision quoted above, the court refuses to accept the OTS's proffered interpretation of the statute which would allow the appointment of the RTC, the first conservator, as a second conservator, without replacing the first conservator. OTS's interpretation is contrary to the clear language of the relevant sections of FIRREA and is an attempt to ignore the replacement mechanism spelled out in Section 5(d)(2)(F) of HOLA as amended by FIRREA. Thus, the court finds that the director lacked any statutory authority to appoint the RTC as a second conservator while the RTC was still serving as conservator for Franklin.

### C. Failure to Obtain Written Approval of the State Official.

Even if OTS's strained interpretation of FIRREA were accepted and Director Ryan did have authority to appoint a second conservator on June 1, 1990, such attempted appointment would still fail because of the failure of Director Ryan to attempt to obtain the approval of Commissioner Douglass, the state official with jurisdiction over Franklin. Section 5(d)(2)(A) of HOLA, as amended by Section 301 of FIRREA, specifically requires that before a conservator can be appointed for Franklin, the director must attempt to seek the approval of the Commissioner of the Kansas Savings and Loan Department. This section states in part

> "The authority [to appoint a conservator] shall not be exercised without the written approval of the State official having jurisdiction over the insured State savings association that one or more of the grounds specified for such exercise exists."

FIRREA, Pub.L. No. 101–73, § 301, 103 Stat. 183, 292 (to be codified at 12 U.S.C. 1464(d)(2)(D)).

It is undisputed that Director Ryan never attempted to seek the approval of Commissioner Douglass. Ryan attempts to avoid the statutory requirement by asserting that Commissioner Douglass' initial approval in February 1990 could be carried over and serve as approval for the appointment in June 1990. However, Director Ryan has attempted to treat the June 1, 1990, appointment as a new and independent appointment based on grounds discovered since the initial appointment and in addition to the grounds stated for the initial appointment. For the new appointment to be

effective and in compliance with FIRREA, Director Ryan is required to seek the approval of the state authority. Since the director has failed to do so, the court finds that the attempted second appointment of conservator for Franklin on June 1, 1990, is invalid on this ground.

In conclusion, the June 1, 1990, attempted appointment of conservator for Franklin, while Franklin was already in conservatorship, is invalid. Director Ryan lacked the statutory authority to attempt such a second appointment, and Director Ryan failed to seek the approval of Commissioner Douglass, the state authority regulating Franklin.

IT IS THEREFORE BY THE COURT ORDERED that plaintiffs' first motion for summary judgment (doc. 57), which sought summary judgment on Count V of their amended complaint, is denied.

IT IS FURTHER ORDERED that defendants Director of OTS and U.S.A.'s joint motion to dismiss or for summary judgment (doc. 169) on Count V of plaintiffs' amended complaint is granted.

IT IS FURTHER ORDERED that plaintiffs' third motion for summary judgment (doc. 239) is granted.

IT IS FURTHER ORDERED that defendant OTS's amended motion to dismiss for mootness (doc. 178) is denied as moot.

IT IS FURTHER ORDERED that the motion of the U.S.A. to be excused from presence at trial (doc. 254) is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' motion to strike pleadings of, or to dismiss, the U.S.A. as a party defendant (doc. 201) is denied as moot.

IT IS FURTHER ORDERED that defendant OTS's motion to dismiss, or for summary judgment, on Counts IX–X, XIII–XX of the plaintiffs' supplemental complaint (doc. 232) is denied. Defendant OTS's motion for summary judgment on Counts XIII, XV, and XX is denied on the merits, and the motion for summary judgment on Counts IX, X, XIV, XVI, XVII, XVIII and XIX is denied as moot.