**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**SUN AND SAND IMPORTS, LTD., INC.,**
**Defendant-Appellant,**

and

**Guido Muller, individually and as President of Sun and Sand Imports, Ltd., Inc., Defendant.**

**No. 186, Docket 83–6164.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 1983.

Decided Jan. 5, 1984.

---

8.  241 F.2d at 894 n. 6.

Louis Strassberg, New York City (Strassberg & Strassberg, New York City, on the brief), for defendant-appellant.

Mary Anne Wirth, Asst. U.S. Atty., New York City (Rudolph W. Giuliani, U.S. Atty., and Jane E. Bloom, Asst. U.S. Atty., New York City; Randy S. Chartash, Dept. of Justice, Washington, D.C., on the brief), for plaintiff-appellee.

Before TIMBERS, NEWMAN and CARDAMONE, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Sun and Sand Imports, Ltd., Inc. (Sun and Sand) appeals from an order entered May 27, 1983 in the Southern District of New York, Lee P. Gagliardi, *Dis-*

*trict Judge,* 564 F.Supp. 1402, enjoining the importing, selling, or offering for sale of two children's garments known as "Footsie" and "Nectarine". This appeal presents issues involving the vagueness doctrine and the proper standard for a pre-enforcement injunction under § 6(a) of the Flammable Fabrics Act (FFA), 15 U.S.C. § 1195(a) (1982).

We hold that the pre-enforcement injunction was properly entered. The regulatory definition of children's sleepwear is not void for vagueness under the due process clause of the Fifth Amendment. Having shown a fair ground for litigation, the United States was entitled to the injunction. We affirm.

## I.

"Footsie" and "Nectarine" are children's garments imported by Sun and Sand. They are sold in sizes which fit infants and toddlers. They are made of soft stretchable fabric with no trim. They have attached feet and a front zipper running from neck to crotch. Sun and Sand has conceded that Footsie and Nectarine are made of flammable fabric.

On February 7, 1983, the Consumer Product Safety Commission (CPSC) issued an administrative complaint charging that Sun and Sand had imported and transported in interstate commerce flammable children's sleepwear in violation of the FFA, 15 U.S.C. §§ 1191–1204 (1982) and 16 C.F.R. § 1615 et seq. (1983). On May 3, 1983, the United States commenced this action seeking to enjoin Sun and Sand from importing and selling flammable children's sleepwear pending final disposition of the administrative proceedings.

Following an evidentiary hearing, the district court filed a well considered opinion directing that the import, sale, or offering for sale of Footsie and Nectarine be enjoined pending conclusion of the administrative proceedings. The court held first that the regulation defining children's sleepwear is not unconstitutionally vague. It found that the three criteria published in the CPSC policy statement provide manufacturers with clear information regarding the types of garments which are subject to the flammability standard; that the publication of cease and desist orders provides additional descriptions of non-complying clothing; and that the pre-distribution advice offered to manufacturers by the CPSC concerning coverage of the sleepwear regulations combine to provide constitutionally adequate notice as to the nature of the prohibited conduct.

The court further held that it was appropriate to enjoin Sun and Sand. Considering the evidence in light of the standard applicable to preliminary injunctions under § 13(b) of the Federal Trade Commission Act (FTCA), 15 U.S.C. § 53(b) (1982), the court concluded that the United States had sustained its burden by raising questions going to the merits that are fair ground for thorough investigation and determination by the agency. In support of this conclusion, the court found that sufficient evidence supported the CPSC's preliminary determination that the fabric and construction of Footsie and Nectarine make them suitable for use as sleepwear; that Sun and Sand had not uniformly promoted and labelled the garments as playwear; and that there was a serious question as to whether Footsie and Nectarine will be used by the consumer as sleepwear in a substantial number of cases.

Sun and Sand argues that the regulatory definition of children's sleepwear is void for vagueness under the due process clause of the Fifth Amendment; that the district court applied an incorrect standard for a pre-enforcement injunction; and that the CPSC does not have a fair and tenable chance of success on the merits in the administrative proceedings. We shall consider each of these arguments seriatim.

## II.

Children's sleepwear is defined in a regulation promulgated under the FFA as

> "any product of wearing apparel up to and including size 6X, such as nightgowns, pajamas, or similar or related items, such as robes, intended to be worn primarily for sleeping or activities related to sleeping. Diapers and underwear are excluded from this definition."

16 C.F.R. § 1615.1(a). In addition, the CPSC uses the following factors to determine whether an item of children's clothing is sleepwear within the meaning of the regulation: the nature of the product and its suitability for use by children for sleeping or activities related to sleeping; the manner in which the product is distributed and promoted; and the likelihood that the product will be used by children primarily for sleeping or activities related to sleeping in a substantial number of cases.[1]

Before turning to the merits of Sun and Sand's vagueness challenge, we must determine what standard to apply. A provision is void for vagueness if it is so vague that it gives no warning to the challenger that his conduct is prohibited. *United States v. Harriss*, 347 U.S. 612, 617 (1954). In *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.*, 455 U.S. 489 (1982), the Supreme Court held that a more relaxed standard is to be applied to economic regulations which do not implicate fundamental rights and provide only for civil penalties. The instant case involves an economic regulation. Sun and Sand argues that the more restrictive standard should apply because the FFA provides criminal penalties for willful violations.[2] The critical distinction is that criminal penalties are imposed only for *willful* violations of the FFA. A scienter requirement may mitigate the vagueness of a law. *Hoffman Estates, supra,* 455 U.S. at 499. Moreover, the CPSC here sought only a cease and desist order. Sun and Sand remains free to assert a vagueness defense in any criminal action which may ensue.

We hold that the definition of children's sleepwear set forth in the regulation promulgated under the FFA is sufficiently specific. Moreover, the CPSC's criteria for determining whether an article of clothing is primarily sleepwear provide guidance to the manufacturer, as do the examples provided by the cease and desist orders published in the Federal Register.[3] In addition, the agency is willing to give pre-enforcement advice to manufacturers concerned with the applicability of the FFA to their products. We find these factors persuasive, as we did in *Toy Manufacturers of America, Inc. v. Consumer Product Safety Commission*, 630 F.2d 70 (2 Cir.1980). We decline Sun and Sand's invitation to require an unworkable level of specificity. In *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337, 340 (1952), the Supreme Court recognized that because "few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions."

Sun and Sand focuses upon a 1978 memorandum by a compliance officer to the CPSC stating that "[d]ifferences between CPSC and firms regarding particular garments may then be litigated, as necessary, to resolve differences of opinion as to the intended use of the garments and to establish case precedence." Statutes and regulations, however, are not impermissibly vague simply because it may be difficult to determine whether marginal cases fall within their scope. *United States v. National Dairy Products Corp.*, 372 U.S. 29, 32 (1963). The burden upon a manufacturer of defending a cease and desist proceeding in a marginal case does not render the standard

---

1. At the time the CPSC issued its complaint on February 7, 1983, these three factors were set forth at 16 C.F.R. § 1615.64 (1982). For reasons not relevant to this case, that section was revoked in its entirety on February 11, 1983. 48 Fed.Reg. 6329 (1983). The new proposed policy statement contains the same three factors. 48 Fed.Reg. 6350 (1983).

2. The FFA provides that a person who willfully violates 15 U.S.C. § 1192 "shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not more than $5,000 or be imprisoned not more than one year or both . . . ." 15 U.S.C. § 1196 (1982).

3. Sun and Sand's assertion that the Federal Register is not readily accessible to the industry is frivolous. Sun and Sand is charged with constructive notice of such cease and desist orders. 44 U.S.C. § 1507 (1976); *Federal Crop Insurance Corp. v. Merrill*, 332 U.S. 380, 384–85 (1947).

vague. It is not unfair to require that "one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." *Boyce Motor Lines, supra,* 342 U.S. at 340 (footnote omitted). Only a reasonable degree of certainty is necessary. *Id.* We hold that that requirement has been complied with here.

### III.

We turn next to the propriety of the pre-enforcement injunction.[4] Again, we must determine the proper standard to be applied.

### (A)

■ Both Sun and Sand and the United States urge a standard for pre-enforcement injunctions under the FFA that is identical to that for preliminary injunctions under § 13(b) of the FTCA, 15 U.S.C. § 53(b) (1982). The vague standard of "proper showing" is used in both § 13(b) of the FTCA and § 6(a) of the FFA. In *Federal*

*Trade Commission v. Lancaster Colony Corp., Inc.,* 434 F.Supp. 1088, 1090–91 (S.D. N.Y.1977), the court interpreted § 13(b) to require that the agency show preliminarily that it has a fair and tenable chance of ultimate success on the merits.[5] In view of the FFA's substantial borrowing of enforcement procedures from the FTCA, 15 U.S.C. § 1194 (1982), the application of the FTCA standard to the FFA strikes us as appropriate. Unlike § 6(a), however, § 13(b) specifically directs the district court's attention to "weighing the equities and considering the Commission's likelihood of ultimate success." 15 U.S.C. § 53(b).[6] Under the FTCA, the equities must weigh in favor of issuance of a preliminary injunction. In the FFA context, however, we hold that it is proper to assume that the public interest warrants an injunction so long as the agency has shown a fair ground of litigation.

### (B)

■ This brings us to the application of this standard to the case involving Footsie

4. We think that it is important to distinguish this case where an injunction is sought pending agency proceedings from the case involving a typical preliminary injunction which is sought to maintain the status quo or status quo ante pending district court litigation. This is implicit in the nomenclature "pre-enforcement injunction". An injunction of the former type may be either preliminary or final. A plaintiff seeking a pre-enforcement injunction may first make a preliminary showing of entitlement; then (whether he wins or loses) he may make a fuller showing at a plenary hearing on his right to a final injunction of limited duration. *Local 553, Transport Workers Union of America, AFL–CIO v. Eastern Air Lines, Inc.,* 695 F.2d 668, 676 n. 6 (2 Cir.1982); *Guinness-Harp Corp. v. Jos. Schlitz Brewing Co.,* 613 F.2d 468, 472 (2 Cir.1980) (injunction pending arbitration). The more frequent practice, illustrated by the instant case, is to seek a final pre-enforcement injunction in a single proceeding.

5. We do not believe that there is any significant difference between the "serious question" standard and the "fair and tenable chance" standard. Most courts have found the two to be interchangeable. *Lancaster Colony, supra,* 434 F.Supp. at 1090–91; *accord, Federal Trade Commission v. Beatrice Foods Co.,* 587 F.2d 1225, 1229 (D.C.Cir.1978) (statement of Judges MacKinnon and Robb). The only court which has recognized a difference between the two standards concluded that the "serious question" standard—arguably the one applied be-

low—placed a *higher* burden on the government. *Federal Trade Commission v. National Tea Co.,* 603 F.2d 694, 698 (8 Cir.1979).

6. In enacting § 13(b), however, Congress made clear that it did not intend to adopt the traditional test for a preliminary injunction applicable to private party litigation. Instead, Congress said that it sought to codify the standard of the decisional law as illustrated by *Federal Trade Commission v. Sterling Drug, Inc.,* 317 F.2d 669 (2 Cir.1963). *See* Conf.Rep. No. 93–924, ¶ 16, *reprinted in* 1973 U.S.Code Cong. & Ad.News 2523, 2533. This citation strikes us as odd for two reasons. First, an injunction in *Sterling Drug* was denied. Second, we explicitly said that we were not deciding the conflict between the circuits as to the proper showing for an FTC injunction. 317 F.2d at 678. Presumably what Congress intended was adoption of the *analysis* of the case, *i.e.,* an inquiry as to whether the agency had shown a basis for believing that the statute would be violated plus a showing that the public interest warranted an injunction. Even so, it is somewhat anomalous that Congress pointed to *Sterling Drug,* which had construed § 13(a) of the FTCA, a provision that makes no reference to "likelihood of ultimate success" or "the equities", and then, in enacting § 13(b), inserted language that specifically mentions "likelihood of ultimate success" and "the equities".

and Nectarine. We hold that a serious question has been raised as to whether these garments are sleepwear within the meaning of the FFA.

The district court reviewed the CPSC compliance staff's determination of the three policy factors referred to above which were set forth at 16 C.F.R. § 1615.64. With respect to the first factor, the staff concluded that Footsie and Nectarine were suitable for use as sleepwear. This preliminary determination was made on the basis of all the garments' characteristics, including design, body coverage, trim, openings, and the softness and comfort of the fabric. Sun and Sand may be correct in asserting that today's stylish and fashion conscious babies wear playsuits with attached feet. Nevertheless, attached feet are suggestive of sleepwear. In combination with fabric and other characteristics, that may be determinative. The court correctly so held.

With respect to the second factor of distribution and promotion of the garments, the evidence does not show that Sun and Sand consistently labelled and promoted the products as playwear. An investigation of nine small children's clothing stores in the New York area found some stores where Footsie and Nectarine would be sold to customers asking for sleepwear, others where they were intermingled with garments clearly intended for sleepwear, and some where they were sold without any protective labelling. In view of this evidence, the court properly concluded that the United States had raised a fair question as to whether Sun and Sand had effectively promoted and labelled the clothing as playwear.

With respect to the third factor which concerns the likelihood that the products would be used primarily for sleeping or activities related to sleeping in a substantial number of cases, the compliance staff relied upon the striking similarity between Footsie and Nectarine and other clothing recognized and promoted as classical sleepwear. The court properly held that this evidence was sufficient to raise a serious question as to whether the garments in question will be used as sleepwear in a substantial number of instances.

We hold that the district court correctly held that the United States had introduced sufficient evidence to show a fair ground for agency determination and that the pre-enforcement injunction was properly entered. In so ruling, we are not pre-judging the agency's ultimate decision. *Sterling Drug, supra,* 317 F.2d at 678 (Marshall, J., concurring). All we are deciding is that the district court properly found that the agency had shown that there was a fair ground of litigation.

Costs to appellee on this appeal.

Affirmed.