William **MANNING** and Manning & Napier Advisors, Inc., Plaintiffs–Appellees,

v.

**ENERGY CONVERSION DEVICES, INC.** and Stanford R. Ovshinsky, Defendants–Appellants,

and

**American Arbitration Association, Defendant.**

No. 469, Docket 87–7799.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1987.

Decided Nov. 20, 1987.

---

Ronald L. Marmer, Chicago, Ill. (Chester T. Kamin, Jenner & Block, Chicago, Ill., David L. Hoffberg, Carolyn G. Nussbaum, Nixon, Hargrave, Devans & Doyle, Rochester, N.Y., on the brief), for defendants-appellants.

Theodore S. Steingut, New York City (Steven A. Berger, Howard A. Wintner, Berger & Steingut, New York City, on the brief), for plaintiffs-appellees.

Before NEWMAN, WINTER, and MINER, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal from an order compelling arbitration illustrates the difficulties facing a district judge when parties are imprecise as to both the relief sought and the grounds of their opposition. The appeal is brought by defendants-appellants Energy Conversion Devices, Inc. ("ECD") and Stanford R. Ovshinsky from an order of the District Court for the Western District of New York (Michael A. Telesca, Judge) entered on August 18, 1987, and amended on September 16, 1987. The order compels appellants to arbitrate a dispute with plaintiffs-appellees William Manning and Manning & Napier Advisors, Inc. and provides ancillary relief pending the arbitration. Though we do not endorse the procedures that were followed as a model for the future, we conclude, under the circumstances of this case, that appellants have failed to present to the District Court an adequate basis for opposing or vacating the order that was entered, and we therefore affirm.

## Facts

ECD is a publicly traded corporation engaged in the development of high technology products. According to the plaintiffs, ECD has lost money in each of the past ten years and has an accumulated deficit of more than $100 million. Manning and his company are investment advisors with more than $2 billion of assets under management. Manning, his company, and their clients have invested more than $28 million in ECD and its subsidiaries in the past three years. Though remaining optimistic about the potential success of ECD and its products, Manning became increasingly concerned about the quality of ECD management's business acumen and the degree to which Ovshinsky, ECD's founder and chief executive officer, exercised domination over the company. Through ownership of Class A stock entitled to 25 votes per share, Ovshinsky and his family effectively control more than 50 percent of the voting power of ECD's common stock.

Manning alleges that in order to obtain his continued support of ECD's efforts to attract investment capital, ECD entered into an agreement with him on November 25, 1986. That agreement, which underlies the current dispute, is contained in a letter to Manning written on the letterhead of ECD and signed by Ovshinsky as chief executive officer. Since the meaning of the agreement (hereinafter "the Letter Agreement") is part of the arbitrable dispute, we set forth Manning's claim as to the contents of the letter, without intimating any views as to the correctness of his interpretation. According to Manning, Ovshinsky agreed to grant an irrevocable proxy over his "loaded vote" (24 of the 25 votes of each share owned by Ovshinsky and his family) to a committee of five independent directors of ECD, to be chosen from ECD's board membership by Manning. The proxy agreement is to continue until ECD's financial situation improves to the point of meeting specified criteria. The Letter Agreement also includes various commitments by ECD concerning annual meetings of the corporation, future ECD plant locations, and budget reductions. Manning also contends that the Letter Agreement adopted by reference a press release in which ECD management announced its intention to seek shareholder approval of a proposal for cumulative voting for the board of directors.

Especially pertinent to this appeal is a paragraph in which Ovshinsky acknowledges "the importance of the pledges in this letter" and which further provides: "Any dispute over their interpretation will be subject to binding arbitration by the American Arbitration Association, and such arbitration shall be conducted in the City of Rochester, New York, and shall not be challenged later by either side."

Manning alleges that ECD and Ovshinsky have violated the Letter Agreement in two respects. First, he cites the proposal for cumulative voting that ECD planned to submit for shareholder approval at a special shareholders meeting originally scheduled for August 31, 1987. Under this proposal, cumulative voting for directors would be authorized subject to a proviso

that no director elected solely because of cumulative voting could serve on a committee authorized to exercise proxy voting rights, *i.e.*, the committee to be selected by Manning pursuant to the Letter Agreement. Second, Manning contends that the independent committee contemplated by the agreement is not independent because there are only five nonmanagement directors of ECD and these five are not in fact independent of ECD management.

On August 14, 1987, Manning submitted these two allegations to the American Arbitration Association (AAA) in a verified statement of claim for arbitration. On the same date, plaintiffs served upon defendants an order to show cause in the New York Supreme Court, Monroe County, why a temporary restraining order and preliminary injunction should not be issued in aid of the arbitration. N.Y.Civ.Prac.L. & R. 7502(c) (McKinney Supp.1987). The show cause order sought an injunction barring defendants from soliciting proxies in support of its cumulative voting proposal and from conducting a special meeting of shareholders for the purpose of voting on the proposal. Plaintiffs also sought an order requiring the AAA to expedite the arbitration. A hearing on the show cause order was scheduled for August 17. On that date defendants served upon the plaintiffs a complaint instituting an action in the District Court for the Western District of Michigan. That complaint accused Manning of securities laws violations and fraudulent inducement of the Letter Agreement. Later on August 17, defendants removed the New York suit to the District Court for the Western District of New York and moved to dismiss or, in the alternative, to transfer the action to Michigan. Upon their appearance in the District Court in Rochester still later on August 17, the parties were advised that all motions would be heard the following day.

At the hearing on August 18 before Judge Telesca, the plaintiffs submitted an affidavit and documentary evidence in support of their request for injunctive relief. Defendants submitted their unverified complaint in the Michigan action. Judge Telesca heard oral argument on the motions of all parties. Plaintiffs, pressing their claim for an order enjoining the solicitation of proxies and the holding of the shareholders meeting, characterized their demand at the outset of the hearing as a request "for a temporary restraining order in aid of arbitration." They did not in terms request an order compelling arbitration.

Defendants argued primarily in support of their motion to dismiss the action or transfer it to Michigan. This relief, not pursued on this appeal, was sought on the ground that plaintiffs' claims were compulsory counterclaims to the Michigan complaint. The defendants made only oblique references to matters that might defeat the plaintiffs' claims for injunctive relief in aid of the arbitration. At one point, counsel for defendants asserted, "I don't believe that consideration [for the Letter Agreement] passed." Later he qualified this statement by saying, "I don't believe, as a technical matter, there is consideration for the agreement, certainly not cash consideration." He retreated still further when specifically asked by Judge Telesca, "What did he [Manning] agree to?" Counsel replied, "He agreed to assist E.C.D. in supporting the Ovonic Imaging System [an ECD subsidiary] offering. He was going to attempt to encourage investors to participate in the offering."

Later, in characterizing the complaint in Michigan, counsel for ECD and Ovshinsky stated that "we have, in fact, challenged the validity and included within that the scope of the November, 1986 letter agreement between the Ovshinskys and Mr. Manning."

At the conclusion of oral argument, Judge Telesca announced that he would reserve decision but would issue a ruling before the end of the day, which he did. That ruling recited the history of the dispute, the existence of the arbitration provision of the Letter Agreement, and the plaintiffs' claim of an arbitrable issue arising out of the proposed cumulative voting plan. The ruling denied the defendants' motion to dismiss or transfer. Turning to the plaintiffs' requests, Judge Telesca observed that because he saw no need "to

hold a further hearing" he would issue "a preliminary injunction rather than a temporary restraining order." He then issued a preliminary injunction barring the defendants, pending the arbitration, from holding the scheduled shareholders meeting and barring all parties from soliciting proxies until arbitration was completed. The District Judge denied the plaintiffs' request for an order expediting the arbitration.

On September 1, 1987, plaintiffs renewed their effort to obtain expedited arbitration by filing a motion to compel the defendants to submit to expedited arbitration. The next day, September 2, defendants moved the District Court to "stay arbitration pursuant to its August 18, 1987 Order" pending appeal to this Court. As grounds for the stay, defendants alleged that the District Court had ordered arbitration (1) before ECD and Ovshinsky had had an opportunity to file an answer, (2) without an evidentiary hearing, and (3) without "specifically resolving the necessary factual predicates for any arbitration." The stay motion did not identify what factual issues required resolution, nor was it supported by any affidavits indicating what evidence the defendants wished to present. Subsequently defendants filed an answer to the plaintiffs' removed state court petition and a jury demand, presumably relying on section 4 of the Federal Arbitration Act, 9 U.S.C. § 4 (1982).

On September 16, Judge Telesca heard arguments on the motions of both sides. Most of the colloquy at this hearing concerned plaintiffs' claim that the defendants were delaying the arbitration and defendants' denial of that claim. Toward the end of the hearing Judge Telesca turned to defendants' motion for a stay of arbitration. Counsel for the defendants told Judge Telesca that the defendants "understood your Honor to have ordered us to arbitration." Judge Telesca replied that it had been the intent of his August 18 ruling that "any dispute under [the Letter Agreement] would be submitted to arbitration." To make the matter clear, he indicated that he would amend the August 18 ruling to include an order compelling arbitration. With respect to the request for a stay,

counsel for defendants stated only that he was requesting such relief; he made no assertion of any defect in the issuance of the August 18 order nor alerted the District Court to any issue on which he wished to have a hearing. Later that day Judge Telesca issued a ruling that (1) amended the August 18 ruling to include language ordering arbitration, (2) denied the plaintiffs' motion for expedited arbitration, and (3) denied the defendants' motion for a stay. At that point defendants filed a notice of appeal from the August 18 ruling.

On September 29, a panel of this Court heard argument on defendants' motion for a stay pending appeal. In response to inquiry from the Court as to whether the August 18 ruling was preliminary to any further proceedings in the District Court, counsel for defendants replied, "I think the Order Compelling Arbitration is final. I think that is it. I don't think there is anything more to be done in the District Court." That view was shared by counsel for the plaintiffs. This Court denied the motion for a stay pending appeal but expedited the appeal, which is now before us.

### Discussion

■ At the outset we encounter a problem of nomenclature that has arisen in similar cases. The District Court issued what it termed a "preliminary injunction." Normally a preliminary injunction is preliminary to further proceedings in a district court; if the plaintiff prevails, he is entitled to a "final injunction." However, in some circumstances a plaintiff seeks injunctive relief that is preliminary not to further district court proceedings but to proceedings in some other forum. The relief sought may be simply maintenance of the status quo, *e.g., Guinness–Harp Corp. v. Jos. Schlitz Brewing Co.,* 613 F.2d 468 (2d Cir.1980) (injunction to maintain distributorship pending arbitration), or may entail significant affirmative relief, *e.g., United States v. Sun and Sand Imports, Ltd.,* 725 F.2d 184 (2d Cir.1984) (injunction to bar importation of goods pending administrative agency proceeding); *Local 553, Transport Workers Union v. Eastern Air Lines,*

*Inc.,* 695 F.2d 668 (2d Cir.1982) (injunction to regulate employee job bidding rights pending mediation procedures). Technically, the party seeking such interim relief and the party opposing such relief each have two opportunities to prevail: first at a hearing on a preliminary injunction and later at a hearing on a final injunction. Though the injunction sought is of limited duration, the two-step procedure for obtaining first preliminary and then final relief remains available. *Local 553, Transport Workers Union v. Eastern Air Lines, Inc., supra,* 695 F.2d at 676 n. 6; *see Guinness–Harp Corp. v. Jos. Schlitz Brewing Co., supra,* 613 F.2d at 471. However, in some cases the relief granted, though labeled a "preliminary injunction," is for all practical purposes a "final injunction," albeit one of limited duration, because the parties have made it clear that they have no intention of returning to the district court for further litigation. *See United States v. Sun and Sand Imports, Ltd., supra,* 725 F.2d at 188 n. 4; *Guinness–Harp Corp. v. Jos. Schlitz Brewing Co., supra,* 613 F.2d at 471.

The instant case, like those just discussed, involves an order labeled a "preliminary injunction," but it has been treated by the parties as a final injunction of limited duration. At oral argument in this Court on the application for a stay pending appeal and on the merits of the appeal, counsel for appellants made no claim that only a true preliminary injunction had been granted, which would have entitled both sides to return to the District Court on the issue of whether a final injunction should issue. On the contrary, counsel represented at the stay application that there was nothing more to be done in the District Court. Of course, counsel vigorously contended that the injunction had been improperly issued and urged a remand, but there was no claim that in the event of affirmance any further proceedings would occur in the District Court. In view of these representations and in light of the fact that the arbitration ordered by the injunction had begun and was nearing completion at the time of oral argument of this appeal, we will consider the order appealed from to be a final injunction of limited duration.

Appellees challenge the appealability of that portion of the August 18 order compelling arbitration. No challenge is made to the portions enjoining the solicitation of proxies and the holding of the shareholders meeting. Even if the injunction were preliminary, those portions would be appealable as interlocutory injunctions under 28 U.S.C. § 1292(a)(1). Since the order is final, these aspects are appealable under 28 U.S.C. § 1291.

With respect to the portion of the order compelling arbitration, the matter is not quite so clear. Appellees rely on *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 84–85 (2d Cir.1961), *cert. denied,* 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed. 2d 524 (1962), for the proposition that an order compelling arbitration is not appealable. That case, however, stands only for the far more limited proposition that an order directing a trial on the issue of arbitrability and staying arbitration pending the trial is not appealable. Appellees also rely on *Greater Continental Corp. v. Schechter,* 422 F.2d 1100 (2d Cir.1970), but that decision ruled only that an order granting or denying a stay of arbitration is not appealable. What appellees seek to enlist from *Greater Continental* is the observation that an arbitration does not finally determine any rights since the arbitration findings are not enforceable until confirmed, 422 F.2d at 1102. That proposition has justified denying appealability to orders granting or denying stays of arbitration, but has not been deemed to have a similar effect upon two other types of orders relating to arbitration. First, where arbitration is sought in the course of an ongoing lawsuit, an order staying or refusing to stay the underlying action is appealable under the *Enelow–Ettelson* rule if the main action is one at law. *See Poriss v. Aaacon Auto Transport, Inc.,* 685 F.2d 56, 59 (2d Cir.1982); *Diematic Manufacturing Corp. v. Packaging Industries, Inc.,* 516 F.2d 975, 977–78 (2d Cir.) (distinguishing between order staying or refusing to stay arbitration, which is *per se* not appealable, and order staying or refusing to stay underlying federal action, which is

appealable if action is legal in nature), *cert. denied*, 423 U.S. 913, 96 S.Ct. 217, 46 L.Ed. 2d 141 (1975); *see also* 16 Wright, Miller, Cooper & Gressman, *Federal Practice and Procedure* § 3923, at 58–67 (1977). Second, and more pertinent to the pending case, where the order for arbitration is made in an independent proceeding under section 4 of the Arbitration Act, the order is appealable. *Chatham Shipping Co. v. Fertex Steamship Corp.*, 352 F.2d 291, 294 (2d Cir.1965); *Farr & Co. v. Cia. Intercontinental de Navegacion de Cuba, S.A.*, 243 F.2d 342 (2d Cir.1957).

■ Appellees seek to confine the rule of *Chatham Shipping* to cases formally seeking an order for arbitration pursuant to section 4 of the Act. They point out that they came to court seeking only orders "in aid of" arbitration to enjoin the solicitation of proxies and the holding of the shareholders meeting. They never requested an order compelling arbitration under any authority, let alone section 4. We have no doubt that the issue of appealability does not turn on the statutory provision under which arbitration is sought or granted. *Chatham Shipping* itself was a case in which the plaintiff seeking arbitration incorrectly invoked section 8 of the Arbitration Act, but the District Judge, acting properly in our view, 352 F.2d at 293, treated the motion as if made under section 4.

■ It is a somewhat closer question whether the rule of *Chatham Shipping* should apply to a case such as this where the plaintiff made no demand for arbitration at all. We think the issue of appealability in such circumstances turns not on whether an order for arbitration is sought but whether one is granted and, if so, whether a lawsuit remains in the district court after the arbitration has been ordered. Manifestly, appellants' right to obtain review of the arbitration order cannot be denied because the order was added by Judge Telesca in the absence of a specific request by the plaintiffs. Indeed, Judge Telesca was entirely justified in concluding that if the plaintiffs were entitled to an injunction to bar proxy solicitation and the shareholders meeting "in aid of" arbitra-

tion, there should be an order compelling the arbitration. Otherwise the ancillary relief might last for an extended interval in the absence of any requirement to proceed with arbitration. But the fundamental justification for appealability is the absence of any remaining lawsuit in the District Court. That is the rationale for allowing appeals in cases formally initiated under section 4 of the Arbitration Act. In this case the order compelling arbitration is "the last deliberative action of the court" with respect to the controversy before it. *See Krauss Bros. Lumber Co. v. Louis Bossert & Sons, Inc.*, 62 F.2d 1004, 1005 (2d Cir.1933). As the Supreme Court observed in the context of labor arbitration orders issued pursuant to section 301(a) of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1982), "Arbitration is not merely a step in judicial enforcement of a claim nor auxiliary to a main proceeding, but the full relief sought." *Goodall–Sanford, Inc. v. United Textile Workers*, 353 U.S. 550, 551, 77 S.Ct. 920, 921, 1 L.Ed.2d 1031 (1957). We have acknowledged the relevance of this observation to commercial arbitration. *See Chatham Shipping Co. v. Fertex Steamship Corp., supra*, 352 F.2d at 294. Since the order of August 18, as amended, was intended to be and has been viewed by the parties as disposing of the matter in the District Court, leaving nothing further to litigate, we are satisfied that the order is appealable in its entirety.

■ Turning to the merits, we acknowledge that the procedure followed in this litigation departed from normal practice. On August 18, 1987, the defendants were in the District Court to respond to an application for a TRO to enjoin solicitation of proxies and the holding of the shareholders meeting. They had received notice of this application only three days before. The plaintiffs had not made any request for an order compelling arbitration. By the end of that day, a preliminary injunction had been issued, which, as we have noted, came to be viewed by the parties as a final injunction. That injunction was intended by the District Judge to compel arbitration

and was amended on September 16 to make that intent explicit. This compressed procedure, the appellants contend, denied them notice of any request for an order compelling arbitration and the opportunity for a hearing to contest the propriety of issuing such an order.

Were we viewing the matter at or just after August 18, we might well agree with appellants that their procedural rights had been curtailed to their prejudice. In the ensuing weeks, however, appellants had ample opportunity to alert the District Court to the existence of evidence that would justify a hearing on any of its contentions that arbitration ought not to be compelled. They failed to do so. Their September 2 application for a stay alleges procedural inadequacies, but fails even to allege an issue requiring an evidentiary hearing, much less to furnish the Court with affidavits demonstrating that evidence exists to warrant a hearing. Again on September 16, when their stay application was argued, appellants neither identified an issue requiring a hearing nor presented by affidavit or otherwise any evidence in support of the claims they now press on appeal. Moreover, in seeking a stay from this Court, appellants did not aver any facts to put in issue the propriety of the arbitration order, despite the requirement of Rule 8(a) of the Federal Rules of Appellate Procedure, which provides that "if the facts are subject to dispute the motion shall be supported by affidavits or other sworn statements."

 In this Court appellants' substantive claims are primarily that the Letter Agreement does not obligate ECD to arbitrate because it was not executed by ECD but only by Ovshinsky personally and that the Agreement was induced by fraud. A party resisting arbitration on the ground that no agreement to arbitrate exists must submit sufficient evidentiary facts in support of this claim in order to precipitate the trial contemplated by 9 U.S.C. § 4. *Interbras Cayman Co. v. Orient Victory Shipping Co.*, 663 F.2d 4, 7 (2d Cir.1981); *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673, 676 (2d

Cir.1972). Ovshinsky has never averred that he signed the Agreement only in his personal capacity. The absence of such an affidavit is not surprising in view of the fact that the Letter Agreement was written on ECD letterhead, Ovshinsky signed as "Chief Executive Officer," the Agreement contains numerous commitments that could be performed only by the corporation, and corporate counsel for ECD wrote Manning that the Letter Agreement "is enforceable against Ovshinsky and ECD in accordance with its terms." Nor has any sworn statement been furnished in support of the claim of fraudulent inducement. In any event, appellants have made no claim that the arbitration clause was fraudulently induced, and any claim of fraudulent inducement of the agreement containing the clause would be a matter for the arbitrator, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402–04, 87 S.Ct. 1801, 1805–06, 18 L.Ed.2d 1270 (1967); *S.A. Mineracao Da Trinidade–Samitri v. Utah International, Inc.*, 745 F.2d 190, 195 (2d Cir.1984).

In sum, though the order compelling arbitration was issued under unusual procedural circumstances, appellants have failed to demonstrate that any procedural deficiency prevented them, at various stages while the matter was still before the District Court, from contesting matters as to which they were prepared to present evidence. We need not decide whether the procedures that transformed the TRO into a final injunction would pass muster if used in the context of normal civil litigation. Arbitration is intended to be a process for the swift resolution of disputes, and parties endeavoring to resist arbitration must alert district courts promptly and fully to whatever claims they may have in opposition to arbitration and the evidentiary basis of such claims. If they do not do so, they may not content themselves with an appeal to challenge every curtailment of procedure in the hope of a remand for further proceedings to determine arbitrability. A district judge, properly concerned with expediting resolution of requests for arbitration, is entitled to be informed whether an expedited procedure is preventing a defend-

ant from presenting evidence that is available and relevant to the limited issues that arise in advance of arbitration. Under all the circumstances and in light of the policy favoring prompt initiation of arbitration, the order of the District Court is affirmed.