In the Matter of Robert E. BRENNAN, Debtor.

Robert E. BRENNAN, Plaintiff,

v.

Deborah PORITZ, et al., Defendants.

Civil No. 95–6543 (AET).

United States District Court, D. New Jersey.

Feb. 8, 1996.

---

**6.** *See, e.g., In re Barnhart*, 134 B.R. 580 (Bankr.    W.D.Tex.1991).

Dennis Joseph O'Grady, Riker, Danzig, Scherer, Hyland & Perretti, Morristown, NJ, for Deborah Poritz, et al.

Leonard Wolf, Cole Schotz Meisel Forman & Leonard, Hackensack, NJ, for Robert E. Brennan.

## OPINION

ANNE E. THOMPSON, Chief Judge.

This matter is before the Court on appeal by the State of New Jersey and the New Jersey Bureau of Securities from an order issued on December 6, 1995 by the bankruptcy court. The December 6th order preliminarily enjoined the State of New Jersey and the New Jersey Bureau of Securities from pursuing litigation in the Superior Court of New Jersey against the debtor, Robert Brennan, and against non-debtors Austin Bernet, Inc. and Roger Barnett. For the reasons set forth in this Opinion, this Court will reverse the ruling and remand the case to the bankruptcy court.

## I. BACKGROUND

The present appeal has its basis in the financial difficulties of Robert Brennan. On June 19, 1995, a federal district court in New York rendered a judgment in favor of the Securities and Exchange Commission against Robert Brennan in the amount of $75 million. This judgment was reached after finding that Brennan had committed massive securities fraud. Brennan was required to pay the $75 million to the United States Treasury by mid-August, however on August 7, 1995, he filed for bankruptcy, listing assets of $91,-950,208.31 and liabilities of $89,640,452.00. With consent of the parties, the bankruptcy court on September 18, 1995 appointed an examiner to investigate the debtor's financial affairs during the four years preceding the bankruptcy filing. The examiner was charged with filing a report within 120 days of his appointment.[1]

On August 9, 1995 the State of New Jersey ("State") and the New Jersey Bureau of Securities ("Bureau") instituted a civil action ("State Action") against Brennan, Roger Barnett, Austin Bernet, Inc. ("Austin Bernet") and others, alleging, *inter alia*, securities fraud, obstruction of investigation and racketeering activity. The complaint seeks injunctive relief, restitution and civil monetary penalties. On September 5, 1995, the State and Bureau reached an agreement with Brennan, under which Brennan agreed to certain restrictions on his activities in the securities field. The agreement did not grant the full relief sought in the complaint and both parties maintained the right to seek further relief in the state court.

On October 5, 1995, Brennan instituted the above-captioned action, an adversary complaint against the State. The complaint sought a temporary injunction against prosecution of the State Action as against Brennan, Roger Barnett and Austin Bernet, Inc. pursuant to 11 U.S.C. § 105. The bankruptcy court judge heard oral argument regarding this matter on November 16, 1995 and rendered a decision from the bench, enjoining the State and Bureau from continuing the litigation against Brennan, Roger Barnett and Austin Bernet. Under the terms of the bankruptcy court's order, dated December 6, 1995, the preliminary injunction will remain in place until the examiner appointed in the Brennan bankruptcy issues his report, presumably within 120 days of his appointment. By preliminarily enjoining the State and Bureau action against Brennan until the examiner files his report, the bankruptcy judge sought to grant Brennan "breathing space," during which he could focus his energies on

---

1. We are advised that the examiner's time to file a report has been enlarged to April 8, 1996.

organizing and prioritizing the issues confronting him in his bankruptcy proceeding.

Presently before the Court is an appeal by the State and the Bureau from the preliminary injunction issued by the bankruptcy court pursuant to 11 U.S.C. § 105.

## II. DISCUSSION

### A. Standard of Review

On appeal, this court may set aside the bankruptcy court's factual findings only if the findings are clearly erroneous. The bankruptcy court's legal conclusions, however, are subject to the district court's plenary review. *In re Modular Structures, Inc.*, 27 F.3d 72, 76 (3d Cir.1994) (citing *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989)). When reviewing a decision which falls within the bankruptcy court's discretionary authority, however, the district court may only determine whether or not the lower court abused its discretion. *See, e.g., In re Vertientes, Ltd.*, 845 F.2d 57, 59 (3d Cir.1988) (leave to file late proof of claim); *In re Rosinski*, 759 F.2d 539, 540 (6th Cir.1985) (whether to reopen a bankruptcy case); *Matter of Chung King, Inc.*, 753 F.2d 547, 549 (7th Cir.1985) (whether to confirm a sale); *In re Nucorp Energy, Inc.*, 764 F.2d 655 (9th Cir.1985) (whether to lift automatic stay).

In the present case, the issue before this Court is whether the bankruptcy court erred in using its equitable powers under 11 U.S.C. § 105(a) to stay the State Action against Brennan, Roger Barnett and Austin Bernet. Because the decision as to whether to issue a stay under § 105 falls within the bankruptcy court's discretionary authority, this Court on appeal is charged with determining whether the bankruptcy court abused its discretion.

### B. Finality of Order

As a preliminary issue, the parties raise the question of whether the bankruptcy court's order of December 6, 1995 is a final order. Appellants State and Bureau argue that because the order grants the injunctive

relief requested by the debtor, it is a final order and thus appealable pursuant to 28 U.S.C. § 158(a). Appellee Brennan contends that as the order only preliminarily enjoined the State Action and will expire when the examiner renders his report, it is not a final order. Appellee recognizes, however, that this Court has discretion to grant leave to hear this appeal on an interlocutory basis under 28 U.S.C. § 158(a)(3).

Case law makes clear that whether an injunction is labeled "preliminary" is not dispositive in analyzing its finality. *See Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096 (2nd Cir.1987); *In re Lomas Financial Corp.*, 932 F.2d 147 (2nd Cir.1991). Where a preliminary injunction is issued in anticipation of a later hearing to determine whether a final injunction should issue, the preliminary injunction is not a final order. Where, however, a plaintiff seeks preliminary injunctive relief which maintains the status quo pending the outcome of proceedings in another forum, such injunctive relief is an appealable final order. In this case, we find that the bankruptcy court Order of December 6, 1995 is a final order. The Order enjoined the State action against Brennan until the examiner's report is filed. The Order represents a final injunction of limited duration and this Court has jurisdiction to hear the appeal.[2]

### C. Propriety of § 105 Relief for the Debtor

Under 11 U.S.C. § 362(a), a bankruptcy filing typically stops all state and federal court actions pending against a debtor from proceeding. The automatic stay is designed to give the debtor a breathing spell from his creditors and to permit the debtor to reorganize. In recognition of the possibility of abuse of the bankruptcy mechanism, Congress did create some exceptions to the automatic stay, set forth in 11 U.S.C. § 362(b). Under § 362(b)(4), the automatic stay does not apply to "the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental

---

**2.** The Court further notes that even were it to determine that the bankruptcy court's ruling is not a final order, this Court would grant leave to hear an interlocutory appeal under 28 U.S.C. § 158(a)(3), as the issues presented merit review.

unit's police or regulatory powers." 11 U.S.C. § 362(b)(4). This provision allows a state action against a debtor to proceed despite a bankruptcy filing by the debtor, where the state is acting within its police or regulatory powers.

Both parties in this case agree that the State Action against Robert Brennan falls within the exception enumerated in § 362(b)(4) and was not automatically stayed by Brennan's bankruptcy filing. Recognizing this fact, Brennan commenced this action in the Bankruptcy Court for injunctive relief pursuant to 11 U.S.C. § 105. Section 105(a) sets forth the general equitable powers of the Bankruptcy Court and it states in relevant part:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. 11 U.S.C. § 105(a).

The bankruptcy judge relied on § 105 in issuing the December 6, 1995 order, which enjoined the State and the Bureau from proceeding with their civil action against Brennan until the examiner filed his report. The order did not enjoin the State or the Bureau from pursuing further investigation in connection with the civil action.

Appellants argue that the bankruptcy court erred as a matter of law in issuing the injunctive relief pursuant to § 105. They first contend that when a § 105 injunction is sought against a state's exercise of its police and regulatory powers, the bankruptcy court must make a threshold determination that the exercise of police power in the particular case runs so contrary to the policy of the bankruptcy code that it should not be permitted. Because, according to appellants, the bankruptcy court did not make such a determination in this case, the December 6th order must be reversed. Appellants' second line of argumentation concerns the four-pronged analysis for determining whether preliminary injunctive relief should issue. They assert that the bankruptcy court failed to apply correctly two of the four prongs of the test, namely the requirement of irreparable harm to the movant and the public interest factor. The final argument advanced by the appellants concerns the propriety of ex-

tending the § 105 preliminary injunction to Roger Barnett and Austin Bernet, both non-debtors. The Court will examine these arguments in turn.

### 1. Threshold Determination

Appellants argue that before a bankruptcy court can enjoin a state regulatory proceeding under § 105, the court must make a "threshold determination" of whether allowing the state regulatory action to go forward would "run so contrary to" important bankruptcy policies that it should not be permitted. Under this theory, the bankruptcy court may proceed to analyze whether injunctive relief is proper under the four-pronged analysis only after finding that allowing the continuance of the state action would seriously contravene important bankruptcy policy. Appellants contend that the bankruptcy judge did not make such a threshold determination in this case and thus, issuance of a § 105 preliminary injunction was inappropriate.

Appellee disputes that any "threshold determination" requirement exists in regard to § 105 injunctions of state regulatory proceedings. He contends that § 362(b), which exempts state regulatory proceedings from the automatic stay, operates primarily as a procedural vehicle which shifts the burden for staying actions to the debtor. This theory envisions the absence of an automatic stay as merely placing "the burden on the Debtor to seek such [injunctive] relief." Appellee's Brief at 30.

It is clear from the legislative history and case law that lawsuits which are exempt from the automatic stay may, under appropriate circumstances, be enjoined by the bankruptcy court pursuant to 11 U.S.C. § 105. *See Penn Terra Ltd. v. Dept. of Environmental Resources,* 733 F.2d 267 (3d Cir.1984); *NLRB v. Superior Forwarding, Inc.,* 762 F.2d 695 (8th Cir.1985); *In re Hunt,* 93 B.R. 484 (Bankr.N.D.Tex.1988). In enacting the statutory exemptions from the automatic stay, 11 U.S.C. § 362(b), Congress explicitly noted that § 105 might be used to stay cases which fell within the exemptions:

> Subsection (b) [of 11 U.S.C. § 362] lists seven exceptions to the automatic stay.

The effect of an exception is not to make the action immune from injunction.

The court has ample other powers to stay actions not covered by the automatic stay. Section 105, of the proposed title 11, ... grants the power to issue orders necessary or appropriate to carry out the provisions of title 11. The district court and the bankruptcy court have all the traditional injunctive powers of a court of equity. Stays or injunctions issued under these other sections will not be automatic upon commencement of the case, but will be granted or issued under the usual rules for the issuance of injunctions. By excepting an act or action from the automatic stay, the bill simply requires that the trustee move the court into action, rather than requiring the stayed party to request relief from the stay.

S.Rep. No. 95–989 at 51, 1978 U.S.Code Cong. & Ad.News at 5787, 5837; H.Rep. No 95–595 at 342, 1978 U.S.Code Cong. & Ad.News at 5963, 6298.

The language of this legislative history, standing alone, appears to support the appellee's position that § 362(b) is merely a procedural provision, requiring that the debtor take action to obtain a stay. However, the plain language of § 105 and § 362(b), considered in conjunction with the policies underlying the statutes and case law interpreting the statutes, suggests that the exemption from the automatic stay is more than a burden-shifting device.

The plain language of 11 U.S.C. § 105 restrains the bankruptcy court's discretionary authority to issue § 105 injunctive relief, as the statute specifically states that any action taken under § 105 must be designed to carry out the provisions of the bankruptcy code. Because the bankruptcy code expressly exempts state actions brought under state police or regulatory powers from the automatic stay, it is only in rare cases that a § 105 injunction of a police power exercise will "carry out" the code's provisions.

The Third Circuit addressed the propriety of issuing a § 105 injunction to stay a state regulatory action which is exempt from the automatic stay in *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267 (3d Cir.1984). Although the issue directly before the court in *Penn Terra* was whether a state court lawsuit seeking to enforce an environmental cleanup decree was automatically stayed under 11 U.S.C. § 362(a) or whether such action was within the police power exception in 11 U.S.C. § 362(b), the opinion also described the circumstances which would make § 105 relief from state regulatory proceedings appropriate:

Concededly, in some individual situations, the exercise of State power, even for the protection of the public health and safety, may run so contrary to the policy of the Bankruptcy Code that it should not be permitted. The statute provides for such exigencies, however. The bankruptcy court, in its discretion, may issue an appropriate injunction, even if the automatic stay is not operative. 11 U.S.C. § 105. *Penn Terra*, 733 F.2d at 273.

This language in *Penn Terra* indicates that a § 105 injunction of state police power exercise is appropriate only in limited situations where there is a serious conflict between the exercise of state power and the policy of the bankruptcy code. Only after the bankruptcy court has determined that such a conflict is present and that a § 105 injunction would carry out the policies of the bankruptcy code should the bankruptcy court proceed to apply the four-pronged test for injunctive relief. This interpretation of *Penn Terra* is consistent with cases from other districts. In *In re Compton Corp.*, 90 B.R. 798 (N.D.Tex.1988), a district court reversed a bankruptcy court's issuance of a § 105 injunction of Department of Energy proceedings against the debtor. The court refused to consider whether the bankruptcy court had properly applied the four-pronged test, because it found that the § 105 injunction was not in furtherance of the bankruptcy code. "Having concluded that the [agency] proceeding is not only consistent with the provisions of the Code but indeed expressly exempted from automatic stay via subsections 362(b)(4) and (b)(5), it can hardly be said that section 105 was employed in the instant case to carry out the Code's provisions." *Id.* at 807. Likewise, a district court in *In re Olympia Holding Corp.*, 161 B.R. 524, 529 (M.D.Fla.1993), re-

versed a bankruptcy court's § 105 injunction of agency proceedings because the proceedings did not threaten the assets of the debtor's estate and were not in violation of the bankruptcy code.

An examination of the cases where courts have enjoined state police power or regulatory actions under § 105 makes clear that injunctions of state regulatory actions are a rare remedy, appropriate only in exigent circumstances where the state regulatory action seriously threatens the bankruptcy process. A bankruptcy court may enjoin a state regulatory action where the State action seeks control over or severely threatens the assets of the estate, thus directly conflicting with the bankruptcy code. *See, e.g. MCorp Financial v. Board of Governors,* 900 F.2d 852 (5th Cir.1990); *In re Metro Transportation Co.,* 64 B.R. 968 (Bankr.E.D.Pa. 1986); *In re Hunt,* 93 B.R. 484 (Bankr. N.D.Tex.1988). The State Action at issue in this appeal does not seek control over the assets of the estate because, as both parties acknowledge, the State Action is in its infancy and any judgment against the debtor is several years in the future. Another situation in which a bankruptcy court's authority to enjoin a state regulatory action under § 105 is clearly established is where a state seeks to pursue a claim that would effectively contravene a specific bankruptcy code section. *See, e.g. NLRB v. Superior Forwarding, Inc.,* 762 F.2d 695 (8th Cir.1985). However, such a scenario is not present in this controversy.

The bankruptcy court recognized that its power to enjoin state regulatory actions is "extremely limited." Transcript of Nov. 16, 1995 Hearing at 103. It acknowledged that it could not use its § 105 powers "for purposes directly at odds with a specific code section," *id.,* but concluded that "a bankruptcy court may enjoin actions notwithstanding an exemption from the automatic stay under limited appropriate circumstances." *Id.* at 102. Rather than define these appropriate circumstances as a "threshold determination," however, the bankruptcy court proceeded directly to analyze whether the debtor had "met the general standards applicable to a request for injunctive relief." *Id.* at 104.

In its oral decision the bankruptcy court made clear its conclusion that it could issue a § 105 injunction of state regulatory proceedings based on the four-pronged test for injunctive relief and without any "threshold determination" that there was a serious conflict between the State Action and the bankruptcy process:

> Thus, the Bureau's argument should be ... that this court has the power to enjoin regulatory actions but that the power is extremely limited in its application due to policy consideration. The court's fundamental ability to enjoin regulatory proceedings haven't been determined. The court must look to the evidence to determine whether the Debtor has met the general standards applicable to a request for injunctive relief. The Bureau's counsel quite correctly notes that policy issues play an unusually important role in those considerations. Transcript at 104.

Although the bankruptcy court neither engaged in a "threshold determination" nor explicitly found that a "serious conflict" between the state regulatory action and the bankruptcy process was present, it thoughtfully and carefully stated several reasons for its conclusion that § 105 relief from the automatic stay would be appropriate. The court reasoned that "one of the functions of the bankruptcy code is to provide for an orderly reorganization and the Debtor is being torn in several different directions at this critical early stage of its. bankruptcy." *Id.* at 105.

We believe that we are compelled to find that the bankruptcy court abused its discretion in enjoining the State Action under 11 U.S.C. § 105. Although there are limited circumstances in which a bankruptcy court may stay a state police power exercise under § 105, there must be a finding of serious conflict between the continuance of the state action and the policies of the bankruptcy code. The bankruptcy court did not make any such explicit finding. To the extent that the bankruptcy court did make any finding of conflict between the State Action and fundamental bankruptcy policies, such finding was based on the debtor's need for a "breathing spell" in order to effectuate an orderly reorganization. We agree with appellants that

the debtor's lack of a "breathing spell" due to a state regulatory proceeding cannot constitute a serious conflict between the state regulatory action and the bankruptcy process. *U.S. v. Nicolet,* 857 F.2d 202, 207 (3d Cir. 1988), makes clear that the breathing spell rationale cannot outweigh the police power exception: "These provisions [11 U.S.C. § 362(b) ] embody Congress' recognition that enforcement of the environmental protection laws merits a higher priority than the debtor's rights to a 'cease fire' or the creditors' rights to an orderly administration of the estate." *Id.* Because Congress explicitly exempted state police and regulatory power actions from the "breathing spell," we cannot say that denying the debtor a "breathing spell" from the State Action seriously conflicts with fundamental bankruptcy policies. These reasons compel the Court to reverse the bankruptcy court's decision. Having reached this conclusion, the Court will briefly consider the other arguments advanced by appellants.

## 2. Four Pronged Analysis for Injunctive Relief

Appellants contend that even if no "threshold finding" of serious conflict is necessary for a § 105 injunction of state police power, the bankruptcy court misapplied the traditional four-pronged standard for granting injunctive relief.

The grant of injunctive relief is an extraordinary remedy which should be granted only in limited circumstances. *Frank's GMC Truck Center, Inc. v. General Motors Corp.,* 847 F.2d 100, 102 (3d Cir.1988) (citing *United States v. City of Philadelphia,* 644 F.2d 187, 191 n. 1 (3d Cir.1980)). This proposition is particularly apt in motions for preliminary injunctions, when the motion comes before the facts are developed to a full extent through the normal course of discovery. In ruling on a motion for a preliminary injunction, the court must consider:

(1) the likelihood that the plaintiff will prevail on the merits at final hearing; (2) the extent to which the plaintiff is being irreparably harmed by the conduct complained of; (3) the extent to which the defendant will suffer irreparable harm if the preliminary injunction is issued; and (4) the public interest. *Opticians Ass'n v. Independent Opticians,* 920 F.2d 187, 191–92 (3d Cir.1990). The injunction should issue only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief. *Id.* at 192.

*American Tel. & Tel. Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1427 (3d Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1838, 131 L.Ed.2d 757 (1995) (quoting *Merchant & Evans, Inc. v. Roosevelt Bldg. Prods.,* 963 F.2d 628, 632–33 (3d Cir.1992)). In determining whether to issue a § 105 stay, bankruptcy courts also use this traditional four-pronged analysis. *In re Zenith Laboratories, Inc.,* 104 B.R. 659, 665 (D.N.J. 1989).

Appellants argue that the bankruptcy court failed to make an independent finding of irreparable harm to the debtor, but rather went straight to a balancing test of hardships. We find that we must agree. The bankruptcy court clearly recognized that a showing of irreparable harm to the debtor is a prerequisite to injunctive relief. *See* Transcript of Nov. 16, 1995 Hearing at 105–106. However, the bankruptcy court decision, while holding that the irreparable harm requirement was met, does not clearly identify what irreparable harm the debtor would suffer without the § 105 stay. The decision states in relevant part:

The court is not necessarily persuaded that the time necessary to defend this action would, standing alone, be enough to demonstrate irreparable injury. The court is certainly concerned, however, that if too many demands are placed on the Debtor and his professionals during the early stages of his bankruptcy case, he will not be able to comply with the substantial document requests of the Examiner.... Moreover, while the court agrees that the *Penn Terra* case held that the mere facts that a debtor's time and expense would be absorbed by defense of an action cannot, standing alone, constitute irreparable harm, the Bureau's suggestion that the time and expense are irrelevant to a determination of irreparable harm goes well beyond the holding of *Penn Terra.*

Here, the Debtor's certifications convincingly describe how and why Mr. Brennan's

time and attention must be devoted to particular tasks at this stage if he is to remain on the road to reorganization. On the other hand, the potential irreparable injury to the Bureau and its constituents is not at all clear. Transcript of Nov. 16, 1995 Hearing at 108–109.

The language quoted shows no definitive finding of irreparable harm to the debtor if the § 105 stay were not granted. Rather, the bankruptcy court, after discussing the issue of irreparable harm, but making no clear finding of such, proceeded directly into a balancing of hardships analysis.

■ The bankruptcy court correctly stated that the court may accord certain elements of the four-pronged test greater weight than others in determining the propriety of injunctive relief, *see e.g., Constructors Ass'n of Western Pennsylvania v. Kreps*, 573 F.2d 811 (3d Cir.1978), however the case law is equally clear that the movant must show irreparable injury. *See Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 358–59 (3d Cir.1980). The bankruptcy court did not make a specific finding that the debtor would suffer irreparable harm without the § 105 injunctive relief. The court expressed concern that too many demands might be placed on the debtor and his professionals during the early stages of his bankruptcy and that effective management of the bankruptcy might be disrupted. However, these considerations do not rise to the level of irreparable harm. *See In re Davis*, 691 F.2d 176 (3d Cir.1982). If such circumstances were taken to constitute irreparable harm, the police powers exception to the automatic stay, 11 U.S.C. § 362(b), would be severely undermined, as in every bankruptcy proceeding a debtor will be burdened by the time and expense of defending against a state regulatory action. This reasoning leads the Court to conclude that the bankruptcy court incorrectly issued an injunction pursuant to 11 U.S.C. § 105 without a clear showing by the debtor that he would suffer irreparable harm without such relief.

### 3. Extension of Stay to Austin Bernet, Inc. and Roger Barnett

Appellants assert that by extending the § 105 stay of the State Action to Austin Bernet and Roger Barnett, both non-debtors, the bankruptcy court abused its discretion. We find that we are compelled to agree.

The discretion of a bankruptcy court to stay a state police or regulatory power exercise pursuant to 11 U.S.C. § 105 is limited. This Court has already determined that the issuance of the § 105 injunction in this case was an "abuse of discretion" as the exigent circumstances needed to enjoin a state action expressly exempted from the automatic stay were not present. Thus, under the circumstances of this case, the extension of the stay to Austin Bernet and Roger Barnett would be beyond the bankruptcy court's discretion. Having resolved this issue, we decline to consider the question of whether it would ever be appropriate for a bankruptcy court to enjoin regulatory proceedings as against non-debtors.

## III. CONCLUSION

For the reasons set forth in this Opinion, the Court will reverse the December 6, 1995 order of the bankruptcy court which enjoined the State Action as against Robert Brennan, Austin Bernet, Inc. and Roger Barnett and remand the case to the bankruptcy court. An appropriate Order will be entered.